Mrs. Orene ANDREWS, Appellant,

v.

The CITY OF DALLAS, Appellee.

No. 5246.

Court of Civil Appeals of Texas, Eastland.

April 12, 1979.

Charles J. Winikates, Dallas, for appellant.

Jerry T. Steed, Asst. City Atty., Dallas, for appellee.

DICKENSON, Justice.

The question presented is whether the City has established by summary judgment proof that it has no liability, as a matter of law, for the injuries and death of a motorist whose automobile hit a concrete foundation in the median of a divided roadway. The concrete foundation was the base upon which a left-turn signal was erected by City.

Plaintiff, Mrs. Orene Andrews (mother of deceased motorist) brought suit for herself individually and also as next friend for her minor grandson, Charles Martin Caldwell II (son of deceased motorist), alleging that City was negligent in the maintenance of its street and that this was a proximate cause of the personal injuries to, and death of, Charles Martin Caldwell (deceased motorist). The defendant City answered by a general denial, a plea that the deceased motorist's negligent acts and omissions were proximate causes of the collision, a plea that no cause of action could be asserted by plaintiffs against City " . . . as a matter of Texas law, since the construction, maintenance and operation of traffic control devices is a governmental function of the City of Dallas for which governmental immunity applies," a plea of no duty to the deceased motorist " . . . when he used such roadway in an unusual and extraordinary manner," and a plea that no duty was owed because the left-turn signal was open and obvious as a matter of law. The trial court sustained City's motion for summary judgment that plaintiffs take nothing. Plaintiff appeals. We reverse the summary judgment and remand the cause for trial on the merits.

The summary judgment proof shows that on August 16, 1975, at about 2:10 a. m., Charles Martin Caldwell was driving his vehicle in a westerly direction on Loop 12 and that his car hit the left-turn signal on the west side of the intersection of Loop 12 and Veterans Drive in the City of Dallas, Texas. There were no witnesses to the collision. The City Police found the car lying on its top and the concrete base of the traffic signal uprooted. Charles Martin Caldwell was unconscious, and he died a few hours later.

City agrees that the left-turn signal was installed by City on or about December 31, 1963, and that it had a raised concrete base extending 20 inches above the curb which was 6 inches above the roadway, making the concrete base 26 inches above street level. City also agrees that the concrete base was on a median which was 4 feet wide, and the concrete base was 6 inches from the traveled portion of the highway. In 1966, the City Traffic Engineer issued a directive to discontinue the construction of such high profile concrete bases for traffic control devices and to remove them when work was done at such a location. The speed limit at this location was 45 miles per hour. City produced its copy of the Manual on Uniform Traffic Control Devices which provides in part that: " . . . Concrete bases for sign supports should be flush with the ground level," and that: " . . . Supports for post-mounted signal heads at the side of a street with curbs shall have a horizontal clearance of not less than two feet from the face of a vertical curb," and that: " . . . Any supports which cannot be located with the required clearances should be of the breakaway type or should be guarded if at all practical." The parties agreed in writing that this material "can be used in the appellate court to determine whether there was error in granting of the Motion for Summary Judgment," and the trial judge approved their agreement.

In 1968, City stopped the construction of raised concrete bases for traffic control devices and went to a design where the bases protrude only a few inches above the ground. City's traffic engineer admitted in his deposition that the reasons for the change in design included "safety consideration" and that: "It is a consideration to present to the motorist an area that would be free of obstacles as he proceeds down the road." It should also be noted that there were iron barrier buttons at the intersection

which were 13⅝ inches in diameter and 4 inches in height.

Plaintiff contends that the trial court erred in sustaining City's motion for summary judgment. We agree. The maintenance of the concrete traffic signal base was a proprietary function, and City has failed to establish that there are no factual issues as to its negligence being a proximate cause of the collision.

City relies upon *Voigt v. City of Corpus Christi*, 419 S.W.2d 445 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n. r. e.), for the proposition that:

> The regulation and control of traffic, including the use of traffic control lights, in and by a city is a governmental function as a reasonable exercise of police power. (citing authorities)

The opinion in *Voigt* also points out:

> On the other hand, the maintenance of streets is a proprietary function. A city is under a duty to maintain its streets in a reasonably safe condition, and negligence in the performance of this function renders the city liable for resulting injuries, *even though the unsafe condition is caused by the improper location of a governmental function instrumentality or the failure to properly guard such instrumentality so as to render it reasonably safe.* (citing authorities) (emphasis added)

Our Supreme Court stated in *Crow v. City of San Antonio*, 157 Tex. 250, 301 S.W.2d 628 (1957), that:

> "When a city attempts to exercise its governmental functions in controlling traffic on a street and in such attempt uses means which constitute a dangerous physical obstruction thereon or therein, it has been held that it has committed an affirmative wrong and that an action for damages for injuries resulting therefrom may be maintained." (citing authorities)

The Commission of Appeals stated in *City of Waco v. Darnell*, 35 S.W.2d 134 (Tex. Comm.App.1931, holdings approved) that:

> In this connection we further hold that the municipal duty is not confined absolutely to keeping the street, or the traveled or improved portion thereof, in proper condition, and one injured by a defect or obstruction outside the street, or traveled or improved portion thereof, may still be entitled to recover if such defect or obstruction by reason of its proximity to the street, or traveled or improved portion thereof, renders it not improbable that such defect will result in injury to those using the street or traveled or improved portion thereof in the ordinary manner and while exercising due care. *City of Dallas v. Maxwell*, (Tex.Comm. App.) 248 S.W. 667, 27 A.L.R. 927; 47 C.J. page 1008, par. 1791.

City concedes in its brief that the general rule of law in Texas pertaining to the legal duty owed the traveling public for street and highway construction and maintenance by municipalities and governmental agencies is correctly stated in *City of Dallas v. Maxwell*, 248 S.W. 667 (Tex.Comm.App. 1923, holding approved). The opinion in *Maxwell* states:

> The general rule is that a municipality is charged with the duty of exercising ordinary care to so construct and maintain its public highways as to render them reasonably safe for ordinary travel. A breach of that duty imposes legal liability for all damages which are thereby proximately caused.
>
> . . . In the application of this doctrine it has been held in numerous cases that slight deviations from the traveled roadway . . . are not such unusual occurrences as should not as a matter of law be foreseen and guarded against, and that, where a condition exists which would render the street unsafe in the light of such occurrences, the duty rests upon the municipality to take reasonable precaution against injury which might ordinarily be expected to result therefrom. And such condition, to come within the purview of reasonable foresight, need not necessarily be confined to the street itself, but may arise by reason of its proximity to the street, which would render it not improbable that it would result in

injury to those using the street in the ordinary manner and while exercising due care.

We are not unmindful of the obvious fact that motor-driven vehicles do become defective . . . that drivers are sometimes negligent, and accidents more or less serious result. In a sense all such occurrences are foreseeable. But, when not brought about by some defects in the highway, they are not incident to ordinary travel, and do not happen as a result of the ordinary use of highways—that use for which they are designed. When and where they may happen and the attendant consequences are matters of the barest chance and purest speculation. If in contemplation of law they were foreseeable, and therefore to be guarded against, then no limitations could be set to mark the bounds of a city's duty in the construction and maintenance of its highways.

. . . this holding has no application to those cases in which some defect in the street was a contributing cause toward rendering the animal or machine uncontrollable.

 It seems clear that City, as movant, has not discharged its burden under Tex.R. Civ.P. 166–A to establish that: " 'there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.' " *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970). There is a fact issue as to whether the City of Dallas exercised ordinary care in the construction and maintenance of the concrete foundation of the signal light in close proximity to the traveled portion of the street, and there is also a fact issue as to whether the iron barrier buttons in the street were defects which were a proximate cause of the occurrence.

*Voigt, Crow, Darnell* and *Maxwell,* supra, were all decided before the adoption of the Texas Tort Claims Act, Art. 6252–19, Tex. Rev.Civ.Stat.Ann. (1970). Section 6 of that Act provides that it is cumulative in its legal effect and not in lieu of any and all other legal remedies which the injured person may pursue.

*City of Houston v. Jean,* 517 S.W.2d 596 (Tex.Civ.App.—Houston (1st Dist.) 1974, writ ref'd n. r. e.) states:

The City was under a duty to warn or protect against any special defect such as an excavation or obstruction in the street *or in such proximity to the street* as to render travel unsafe. (citing authorities) (emphasis added)

See also, *De Lahunta v. City of Waterbury,* 134 Conn. 630, 59 A.2d 800 (1948); *Breivo v. City of Aberdeen,* 15 Wash.App. 520, 550 P.2d 1164 (1976); *McKenna v. Volkswagenwerk Aktiengesellschaft,* 558 P.2d 1018 (Haw.1977).

The summary judgment is reversed, and the cause is remanded for trial on the merits.