**STATE DEPARTMENT OF HIGHWAYS & PUBLIC TRANSPORTATION,**
Petitioner,

v.

**Kenneth Herschel PAYNE**
**et ux., Respondents.**

No. C–9343.

Supreme Court of Texas.

Sept. 23, 1992.

Rehearing Overruled Sept. 23, 1992.

Dissenting Opinion on Second Motion for Rehearing Dec. 22, 1992.

Dan Morales, Randy Hill, Austin, for petitioner.

John L. Pierce, II, Navasota, Samuel J. Lee, II, Angleton, for respondents.

## OPINION ON MOTION
## FOR REHEARING

HECHT, Justice.

On motion for rehearing, our opinion of September 11, 1991, is withdrawn, and the following is now the opinion of the Court.

Kenneth Payne and his wife sued the State Department of Highways and Public Transportation to recover damages for injuries which he sustained when he walked off the end of a culvert built and maintained by the State. A jury found that Payne's injuries were caused 60% by the negligence of the State and 40% by his own negligence, and the trial court rendered judgment in Payne's favor for $148,800 plus interest. The court of appeals affirmed. 781 S.W.2d 318 (Tex.App.1989). The two principal issues now before us are first, whether the trial court held the State to a higher standard of care than that imposed by section 101.022 of the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE § 101.022, and thus failed to submit the controlling question of fact to the jury, and second, whether the State has preserved this complaint for appeal. We answer both issues in the affirmative, and consequently reverse the judgment of the court of appeals and render judgment that Payne take nothing.

### I

Payne's injury occurred before sunrise one morning as he walked from his home in the country across a two-lane paved road toward a deer blind he had constructed in a field. A culvert ran perpendicular to and beneath the road, ending about 22 feet from the roadbed on the deer blind side. In the dark, Payne stepped off the culvert and fell about 12 feet into a drainage ditch, sustaining injuries. Although Payne knew there was a culvert near where he was walking, he claimed that he did not see where it ended that morning because vege-

tation obscured it and a reflective marker was missing.

▇▇▇ Payne alleged in his pleadings that the culvert was both a special defect and a premise defect; the State denied that the culvert was a defect of any kind. If the culvert was a premise defect, the State owed Payne the same duty a private landowner owes a licensee. TEX.CIV.PRAC. & REM.CODE § 101.022(a);[1] *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974). That duty requires that a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not. *Id.; see* RESTATEMENT (SECOND) OF TORTS § 342 (1965). If the culvert was a special defect, the State owed Payne the same duty to warn that a private landowner owes an invitee. TEX.CIV.PRAC. & REM.CODE § 101.022(b);[2] *Harris County v. Eaton,* 573 S.W.2d 177, 180 (Tex.1978). That duty requires an owner to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition of which the owner is or reasonably should be aware.

The elements of proof required to establish a breach of these two duties, absent willful, wanton or grossly negligent conduct which Payne did not plead or attempt to prove, may be compared as follows.

To establish liability—

a licensee must prove that:

(1) a condition of the premises created an unreasonable risk of harm to the licensee;

(2) the owner actually knew of the condition;

(3) the licensee did not actually know of the condition;

(4) the owner failed to exercise ordinary care to protect the licensee from danger;

(5) the owner's failure was a proximate cause of injury to the licensee.
*Tennison,* 509 S.W.2d at 561; *see* RESTATEMENT (SECOND) OF TORTS § 342 (1965).

an invitee must prove that:

(1) a condition of the premises created an unreasonable risk of harm to the invitee;

(2) the owner knew or reasonably should have known of the condition;

(3) the owner failed to exercise ordinary care to protect the invitee from danger;

(4) the owner's failure was a proximate cause of injury to the invitee.
*Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983); *Adam Dante Corp. v. Sharpe,* 483 S.W.2d 452, 454–455 (Tex.1972); *see* RESTATEMENT (SECOND) OF TORTS § 343 (1965).

---

There are two differences between these theories. The first is that a licensee must prove that the premises owner actually knew of the dangerous condition, while an invitee need only prove that the owner knew or reasonably should have known. The second difference is that a licensee must prove that he did not know of the dangerous condition, while an invitee need not do so.

In this case, the State built the culvert and thus knew of its existence. That element under either theory of liability is not in dispute. Nor do the parties dispute that Payne knew of the existence of the culvert.

---

1. "If a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises."

2. "The limitation of duty in this section shall not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets or to the duty to warn of the absence, condition, or malfunction of traffic signs, signals, or warning devices as is required by Section 101.060."

The point of contention is whether Payne knew the culvert was in his path as he walked through the undergrowth in the dark. After all, Payne argues, he would hardly have stepped off the edge and fallen twelve feet to serious injury had he known, or had he been adequately warned, that the culvert was in front of him. But, the State responds, he nevertheless knew that the culvert was there somewhere, and his knowledge precludes imposition of liability on the State unless the culvert was a special defect. Both parties introduced evidence regarding Payne's knowledge of the location of the culvert.

At the close of the evidence the trial court gave the jury a charge which asked two liability questions. The first question inquired whether Payne's or the State's negligence was a proximate cause of the occurrence. The second question asked what percentage of such negligence was attributable to each. In addition to the standard definitions of negligence, proximate cause and ordinary care, the trial court gave the jury the following instructions:

> "GOVERNMENTAL LIABILITY": A governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
>
> "DUTY OWED: SPECIAL DEFECT": Where there is a special defect such as an excavation or obstruction on or adjacent to a highway, road, or street or where there is the absence or malfunction of a traffic sign, signal or warning device that is required by law, the governmental unit owes to the plaintiff a duty to warn of such special defect.
>
> The duty owed is a duty to use ordinary care to either warn of a dangerous

condition or to make such dangerous condition reasonable safe, provided the governmental unit had knowledge of the dangerous condition, or through the exercise of ordinary care, should have had knowledge of the dangerous condition.

> "DANGEROUS CONDITION" means a condition other than normally connected with the use of the roadway, excavation or obstruction, and a person using ordinary care could not encounter such condition with safety.

The State's complaint is that the jury charge erroneously assumed that the culvert was a special defect and did not submit Payne's premise defect liability theory to the jury. Specifically, the State complains that the charge does not request the jury to find whether Payne knew of the location of the culvert at the time of his accident.

■ In effect, the trial court determined that the culvert was a special defect as a matter of law. The court of appeals agreed. 781 S.W.2d at 322. To the extent they treated the issue as a question of law rather than of fact, both courts were correct. Whether a condition is a premise defect or a special defect is a question of duty involving statutory interpretation and thus an issue of law for the court to decide. *Eaton*, 573 S.W.2d at 179–80; *see also Blankenship v. County of Galveston*, 775 S.W.2d 439, 441–42 (Tex.App.—Houston [1st Dist.] 1989, no writ). However, both courts incorrectly determined the status of the culvert.

■ Special defects are excavations or obstructions on highways, roads, or streets. Tex.Civ.Prac. & Rem.Code § 101.-022(b); *see Eaton*, 573 S.W.2d at 179. These examples set forth in the statute itself all present an unexpected and unusual danger to ordinary users of roadways.[3]

---

**3.** In analyzing a variety of fact patterns, of course, the courts of our state have recognized that conditions threatening normal users of a road may be special defects even though they do not occur on the surface of a road. *See, e.g., Chappell v. Dwyer*, 611 S.W.2d 158, 161 (Tex.Civ. App.—El Paso 1981, no writ) (condition created by thick brush hiding an arroyo running alongside road with an unmarked break in the brush

appearing to be an intersecting road); *Andrews v. City of Dallas*, 580 S.W.2d 908, 911 (Tex.Civ. App.—Eastland 1979, no writ) (base of traffic signal located six inches from the road); *City of Houston v. Jean*, 517 S.W.2d 596, 599 (Tex.Civ. App.—Houston [1st Dist.] 1974, writ ref'd n.r.e.) (unmarked termination of dead-end street four feet from ditch). Whether on a road or near one, however, conditions can be "special defects

The culvert in this case was not a special defect. The end of the culvert was located far enough from the paved surface that vehicular passengers and other normal users of the roadway were unlikely to encounter it. Payne, unlike an ordinary user of the road, was walking perpendicular to the paved surface into the adjacent field. Only such a pedestrian, whose destination required him to leave the proximity of the road, was ever likely to fall off the end of the culvert. If there was a defect, it was in the field where Payne was walking. The State's duty of care with respect to such a defect is covered by the ordinary rule for premise defects under section 101.022(a).

## II

■ Payne nevertheless argues that the State has not preserved its complaint that the trial court erred in refusing to inquire of the jury concerning his knowledge of the culvert. The State's sole objection to the charge was that the "Duty Owed" paragraph quoted above "constitutes a comment upon the weight of the evidence and amounts to an instruction to the jury that there is, in fact, a special defect, removes that issue from the province of the jury and keeps from it being a fact issue as it should be." Payne argues that this objection was not sufficiently clear to call to the trial court's attention the State's complaint that the culvert should not have been assumed to be a special defect. This argument is rather dubious in the circumstances of this case. The trial court's failure to submit Payne's premise liability theory could hardly have been an oversight. The very fact that it included instructions concerning special defects in the charge indi-

cates that the trial court decided that the culvert was a special defect and not a premise defect. Furthermore, the trial court had allowed the parties to present evidence and argument concerning Payne's knowledge, which would have been irrelevant if the culvert was a special defect. The trial court was certainly aware that the issue was disputed.

Even if the State's objection was insufficient, the State preserved error by requesting the trial court to inquire of the jury concerning Payne's knowledge of the culvert. *Morris v. Holt*, 714 S.W.2d 311 (Tex. 1986). Specifically, the State requested the trial court to include the following question in the charge:

Do you find from a preponderance of the evidence that Kenneth Herschel Payne had actual knowledge that the culvert was at the location in question on F.M. 1301?

Although this question places the burden of proof on the State rather than on Payne where it belongs, Payne can hardly complain. The trial court's refusal to ask the question requested by the State constituted a clear refusal to submit a premise defect theory to the jury.[4]

We do not suggest, of course, that the trial court should have submitted the case to the jury on specific questions rather than broad-form questions, as required by Rule 277, TEX.R.CIV.P. The issue is not whether the trial court should have asked the jury the specific question requested by the State; rather, the issue is whether the State's request called the trial court's attention to the State's complaint that no premise liability theory was submitted to

such as excavations or obstructions on highways, roads, or streets" only if they pose a threat to the ordinary users of a particular roadway.

Only two courts have found a special defect when the defect did not present a hazard to the ordinary users of a roadway. *See City of Austin v. Cooksey*, 561 S.W.2d 874 (Tex.Civ.App.—Eastland), *reversed on other grounds*, 570 S.W.2d 386 (Tex.1978) (improperly secured light pole near an excavation site); *Harris County v. Dowlearn*, 489 S.W.2d 140, 147 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.) (loose wall panel at courthouse). Both of these cases, how-

ever, preceded this court's decision in *Eaton*, and, to the extent they classify as "special" a defect that is not like an excavation or obstruction on a roadway, we disapprove of them.

4. The issue of Payne's knowledge of the location of the culvert is not merely a "phase or shade" of the broad question of the State's liability, as the dissent argues. Rather, it is a key issue in dispute in the case. Nor would a finding that Payne knew of the culvert's location have conflicted with a finding that the State was negligent, as the dissent argues. Rather, such a finding would simply have precluded liability.

the jury sufficiently to preserve that complaint for appeal. The State's requested question clearly called the trial court's attention to the State's complaint because it was the sole element of premise defect liability missing from the charge. Payne appears to argue that the State would have preserved error if it had plainly objected: "The charge submits only a special defect theory and not a premise defect theory." The State's request is clearer than such an objection because it calls attention to the very element of the premise defect theory omitted from the charge. The request not only objects to the omission of the theory, it suggests the missing language necessary to correct the omission. The trial court should have included the missing element in its broad-form submission in an appropriate manner.

We have received two amicus briefs concerning the proper method for preserving a complaint about the jury charge, like the State's complaint in this case. In our State's procedural jurisprudence, there are no rules more recondite than those pertaining to the preparation of the jury charge. As Professor McDonald observed forty years ago: "No aspect of procedure has developed a greater tangle of perplexities than that which embraces the rules as to the charge of the court to the jury." 3 Roy W. McDonald, Texas Civil Practice In District And County Courts § 12.01, at 222 (Frank W. Elliott ed., 1983). The passage of time has not improved things. Dozens of cases decided since Professor McDonald wrote, many of them flatly contradictory, attest to myriad uncertainties in preserving complaints of error in the jury charge. The rules governing charge procedures are difficult enough; the caselaw applying them has made compliance a labyrinth daunting to the most experienced trial lawyer. Today, it is fair to say that the process of telling the jury the applicable law and inquiring of them their verdict is a risky gambit in which counsel has less reason to know that he or she has protected a client's rights than at any other time in the trial.

■ The preparation of the jury charge, coming as it ordinarily does at that very difficult point of the trial between the close of the evidence and summation, ought to be simpler. To complicate this process with complex, intricate, sometimes contradictory, unpredictable rules, just when counsel is contemplating the last words he or she will say to the jury, hardly subserves the fair and just presentation of the case. Yet that is our procedure. To preserve a complaint about the charge a party must sometimes request the inclusion of specific, substantially correct language in writing, which frequently requires that even well prepared counsel scribble it out in longhand sitting in the courtroom. The rules of procedure require that the judge endorse each request with specific language, although sometimes this requirement is ignored. Sometimes a request is not sufficient and may not even be appropriate; instead, counsel must object. The objection must be specific enough to call the court's attention to the asserted error in the charge. It is not clear whether a request will serve as an objection or an objection as a request. Rather than attempt to decide under the pressure of the courtroom and in peril of losing appellate rights, whether an objection or a request is called for, cautious counsel might choose to do both in all cases—request and object. But if they are not kept separate, or if an appellate court later decides that the duplication obscured the real complaint, counsel's precaution may still result in a decision that the complaint was waived.

The procedure has been further complicated by our adoption of broad issue submission, a change intended to have the opposite effect. When special issue practice flourished in Texas, it was easier to determine which party had responsibility for submission of a particular matter to the jury, and which party had the obligation to object to misstatements in order to preserve error. That practice, however, had a host of troubles of its own, causing this Court to reject it in the last decade in favor of broad form submission. Now, however, it is impossible to determine which party has responsibility for each part of a charge.

Because many instructions in a broad form charge bear upon elements of proof not easily divisible among the parties, it is hard to know who should complain. Recently it was argued before this Court that a party who objected to any submission at all of an issue proposed by his opponent, waived that objection if, alternatively, he proposed different language more favorable to his position. The process is becoming worse, not better.

The flaws in our charge procedures stem partly from the rules governing those procedures and partly from caselaw applying those rules. Last year we asked a special task force to recommend changes in the rules to simplify charge procedures, and amendments are under consideration. Rules changes must await the completion of that process; we do not revise our rules by opinion. *Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 915 (Tex.1992). We can, however, begin to reduce the complexity that caselaw has contributed to charge procedures. The procedure for preparing and objecting to the jury charge has lost its philosophical moorings. There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle. In this case, the State clearly met this test.

*     *     *     *     *     *

Payne was not entitled to recover on his special defect theory as a matter of law. To prevail on his premise defect theory, Payne was required to obtain a finding that

he lacked knowledge of the culvert. This element of his claim was not included in the broad-form charge which the trial court submitted to the jury.[5] A finding on this one element cannot be deemed in Payne's favor because the State objected to the omission by requesting a jury question on that issue. Tex.R.Civ.P. 279; *Morris*, 714 S.W.2d 311, 312–13. Thus, the verdict does not support a judgment in Payne's favor.

Accordingly, the judgment of the court of appeals is reversed, and judgment is rendered that Payne take nothing.

Dissenting opinion by MAUZY, J., joined by DOGGETT and GAMMAGE, JJ.

MAUZY, Justice, dissenting.

The dissenting opinion of September 11, 1991 is withdrawn, and the following is substituted in its place.

Today the court reaches an issue improperly, decides it wrongly, and disposes of the case unfairly. I dissent.

I.

In its eagerness to reach the issue of the State's duty, the court takes pains to excuse the State's failure to make a proper objection to the jury charge. Because any complaint regarding a defective instruction is waived unless specifically included in a proper objection, Tex.R.Civ.P. 274, I would hold that the State has waived the error it now asserts.

The trial court submitted a broad-form jury charge along with instructions regarding the State's duty. The instructions explained the duty associated with a special defect, but did not discuss the duty applicable in the absence of a special defect.[1]

---

5. The transcript does not reveal whether Payne requested that these elements of his claim be submitted to the jury. If he had requested them in substantially correct form, it would have been error for the trial court to refuse to submit them. Tex.R.Civ.P. 278. If any such error occurred, however, Payne has waived it because he can not demonstrate from the record that he requested submission of these elements.

1. The relevant portion of the charge read as follows:

"GOVERNMENTAL LIABILITY": A governmental unit in the state is liable for personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.
"DUTY OWED: SPECIAL DEFECT": Where there is a special defect such as an excavation or obstruction on or adjacent to a highway, road, or street or where there is the absence or malfunction of a traffic sign, signal or warning device that is required by law, the

Guided by those instructions, the jury found the State negligent. The trial court rendered judgment on the verdict, reducing the jury's award in accordance with separate findings on comparative negligence.

The State now argues that the obscured culvert should have been treated as an ordinary premise defect, rather than a special defect, as a matter of law. We do not know how the trial court would have responded to this argument, because there is no indication in the record that the State ever urged this view at trial. In fact, the State's only objection to the charge took a very different position: the State argued, wrongly, that the characterization of the culvert should be left to the jury.[2] The objection did not assert that the property's condition was an ordinary premise defect; nor did it point out any inadequacy concerning the duty applicable to an ordinary premise defect.

To preserve any contention that the trial court erroneously charged the jury on the State's duty to Payne, the State was required to object to the trial court's instructions. Tex.R.Civ.P. 274; *see Yellow Cab and Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92, 93 (1955) (holding that when trial court gives erroneous instruction, objection is required to preserve error). A vague or incorrect objection, however, does not suffice to preserve error. An objection to the charge must distinctly point out the objectionable matters and the grounds of the objection. Tex.R.Civ.P. 274; *Wilgus v. Bond*, 730 S.W.2d 670, 677 (Tex.1987). An objection is insufficient to preserve error if it fails to adequately explain why an in-

struction is legally incorrect. *Castleberry v. Branscum*, 721 S.W.2d 270, 277 (Tex. 1987). On several occasions, we have held that an objection based upon one ground did not preserve error on another ground. *See Aero Energy, Inc. v. Circle C Drilling Co.*, 699 S.W.2d 821, 822 (Tex.1985); *Davis v. Campbell*, 572 S.W.2d 660 (Tex.1978).

Although the State objected to the charge, it did so on the basis that the instruction was a comment on the weight of the evidence, not on the ground that it misstated the State's legal duty to Payne. I would hold that this objection did not adequately state the "specific grounds for the ruling [the State] desired the court to make." Tex.R.App.P. 52(a); *see Davis v. Campbell*, 572 S.W.2d at 663 (holding that a "no evidence" objection did not amount to a complaint that a special issue was immaterial). A litigant cannot base an objection at trial on one ground and then complain on appeal that the trial court erred on another ground.

If the State's current assertion is correct—that is, if, as a matter of law, the defect in this case was not a special defect—then the instructions submitted were fatally flawed. The instructions permitted the jury to impose the duty applicable to special defects, and provided no guidance regarding the State's duty in the absence of a special defect. The instructions did not give the jury the opportunity to apply the standard which the State now urges.

Disregarding the defects in the charge, the majority holds that the State preserved error regarding the characterization of the defect by requesting a jury question con-

governmental unit owes to the plaintiff a duty to warn of such special defect. The duty owed is a duty to use ordinary care to either warn of a dangerous condition or to make such dangerous condition reasonably safe, provided the governmental unit had knowledge of the dangerous condition, or through the exercise of ordinary care, should have had knowledge of the dangerous condition.

"DANGEROUS CONDITION" means a condition other than normally connected with the use of the roadway, excavation or obstruction, and a person using ordinary care could not encounter such condition with safety.

"NEGLIGENCE" means failure to use ordinary care; that is to say, failure to do that

which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

2. Counsel for the State asserted:

I have objection to ... the paragraph entitled "duty of special defect." That defines that the basis of the objection is that it constitutes comment upon the weight of the evidence and amounts to an instruction to the jury that there is, in fact, a special defect, removes that issue from the province of the jury and keeps it from being a fact issue as it should be.

cerning Payne's knowledge of the culvert. This view is not only inconsistent with our rules; it is also unsound as a matter of practice. Only by proper objection does a litigant afford the trial court sufficient opportunity to correct defects in the charge. *See Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987). Thus, when the charge contains a defective instruction, the mere tender of a correct issue does not preserve error. *See* Tex.R.Civ.P. 274.

What was the trial court to do when the State requested a question regarding Payne's knowledge of the defect? The majority holds that the trial court reversibly erred by refusing the question; but under settled law, the trial court would have erred by *submitting* it. As explained by University of Texas Law Professor Patrick Hazel, an amicus on rehearing, the requested question was unacceptable. First, the question represented a "phase or shade" of the broad question; and separately submitting one element of a broad question is inconsistent with the concepts underlying broad-form submission. Second, submitting the question could have led to a conflict in the jury's answers, since a "yes" answer to both questions would have meant both that the State was negligent and that the State had no duty. Finally, the request was not in substantially correct wording, as required by Rule 278: it placed the burden of proving Payne's knowledge on the State, while the majority places it on Payne.

Professors J.H. Edgar of the Texas Tech University School of Law and John J. Sampson of the University of Texas School of Law, as amici curiae, agree that the State failed to preserve the error it now asserts. Yet, the majority persists in rewriting established Texas procedure to permit preservation of error by making an incorrect objection and requesting an improper question.

In rejecting the views of legal scholars, the majority continues its abandonment of the principles underlying broad-form submission. *See Keetch v. Kroger* (Tex.1992) (Mauzy, J., dissenting); *Westgate v. State,* 35 Tex.S.Ct.J. 1042, 1052–53, 1992 WL 148114 (July 1, 1992) (Doggett, J., dissenting). Broad-form submission reduces conflicting jury answers, thus reducing appeals and avoiding retrials. *Texas Dept. of Human Serv. v. E.B.,* 802 S.W.2d 647 (Tex. 1990). The proper remedy for a defective instruction, then, is to correct the instruction. If the instruction stands uncorrected, additional issues will muddle the charge and foster conflicting jury answers, increasing the likelihood of appeal and retrial. Today's opinion effectively endorses that approach. I would not. In the interest of comprehensible jury submissions, I would affirm the judgment of the court of appeals without reaching the issue of the State's duty.

II.

Having improperly reached the issue of the State's duty, the court then defines that duty incorrectly. The Tort Claims Act provides that when a claim arises from a premise defect, the governmental unit generally owes the claimant the same duty that a private person owes to a licensee on private property. Tex.Civ.Prac. & Rem. Code § 101.022(a). The task before the court, then, is to decide what duty a private person owes to a licensee on private property.

According to the court, a private person owes to a licensee only the duty "not to injure the licensee by willful, wanton or grossly negligent conduct." 838 S.W.2d at 237 (citing *State v. Tennison,* 509 S.W.2d 560, 562 (Tex.1974)). The exception, the court states, is that "if the licensor has knowledge of a dangerous condition, and the licensee does not, the licensor has a duty to warn the licensee or to make the condition reasonably safe." *Id.*

The duty thus announced contrasts sharply with the duty this court has applied with respect to invitees. As to invitees, an occupier of premises has a duty to use ordinary care to keep the premises in a reasonably safe condition, or to warn of any hazard. *J. Weingarten, Inc., v. Razey,* 426 S.W.2d 538, 539 (Tex.1968). The invitee's knowledge has no bearing on the oc-

cupier's duty; rather, it bears upon the invitee's own negligence. *Parker v. Highland Park*, 565 S.W.2d 512, 521 (Tex.1978).

The court's statement of a special duty for licensors reflects a continued, blind adherence to the age-old system of entrant categorization. In clinging to that system, the court totally disregards the modern trend away from the ancient categories; once again, we simply "succumb to the blandishments of judicial torpidity." *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 554 (Kilgarlin, J., concurring). Myriad courts and commentators have recognized that the common-law classifications "establish immunities from liability which no longer comport with accepted values and common experience." *Smith v. Arbaugh's Restaurant*, 152 U.S.App.D.C. 86, 469 F.2d 97, *cert. denied*, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399 (1973). Thus, modern courts have turned increasingly toward "imposing on owners and occupiers a single duty of reasonable care in all the circumstances." *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959). *See* Note, *Tort Liability of Owners and Possessors of Land—A Single Standard of Reasonable Care Under the Circumstances Towards Invitees and Licensees*, 33 Ark.L.Rev. 194, 197 (1979); Recent Development, *Torts—Abrogation of Common–Law Entrant Classes of Trespasser, Licensee, and Invitee*, 25 Vand.L.Rev. 623, 624 (1972).

The court's error today, though, goes beyond a simple disregard for developments in other jurisdictions. In making a licensor's duty dependent on the licensee's knowledge, the court also ignores significant developments in *this* jurisdiction. When a licensor has knowledge of a dangerous condition, the court holds, the licensor has a duty to warn of the condition, or make it safe, *if* the licensee is unaware of the condition. Thus, to establish a duty to warn or make safe, a licensee has the burden to affirmatively show that he or she had no knowledge of the dangerous condition. This view is a ghost of the old "no-duty" doctrine, under which there was no duty to warn a person of things he or she already knows. *See, e.g., Harvey v. Seale*, 362 S.W.2d 310, 312 (Tex.1962).

Along with the doctrines of volenti non fit injuria and assumed risk, the no-duty doctrine was long a chronic source of confusion and unfairness in Texas premise liability law. After years of wrestling with this "rather clumsy concept," *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 379 (Tex.1963), we finally abolished it outright in *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978). We noted in *Parker* that "[t]he no-duty doctrine has been generally condemned. It is a harsh doctrine and imports a distrust of juries." *Id.* at 519. Further, we recognized that "[a] plaintiff's burden to negate his own knowledge and appreciation ... overlaps and duplicates the voluntary assumption of risk doctrine," which this court abolished in *Farley v. M M Cattle Company*, 529 S.W.2d 751 (Tex.1975). *Parker*, 565 S.W.2d at 519. With *Farley*, the court explained, the no-duty doctrine became obsolete:

> A plaintiff's knowledge, whether it is derived from a warning or from the facts, even if the facts display the danger openly and obviously, is a matter that bears upon his own negligence; it should not affect the defendant's duty.

*Id.* at 521. For those reasons, among others, we unanimously repudiated the whole no-duty concept:

> We now expressly abolish the so-called no-duty concept in this case and, as expressed in *Farley*, "henceforth in the trial of all actions based on negligence ..." The reasonableness of an actor's conduct under the circumstances will be determined under principles of contributory negligence.

565 S.W.2d at 517.

The *Parker* opinion does state that it "deals with invitees and tenants and does not involve licensees or trespassers." *Id.* at 513. The reasoning of the opinion, however, applies every bit as forcefully to licensees as it does to invitees. In either case, requiring the plaintiff to affirmatively negate his or her own knowledge effec-

tively resurrects the doctrine of voluntary assumption of risk. The cleaner, simpler, and fairer way to try premise liability cases is to apply ordinary negligence principles. *See Parker*, 565 S.W.2d at 519. The submission in this case demonstrates the efficacy of that approach: the trial court allowed the jury to determine Payne's comparative negligence, taking into account any knowledge Payne might have had concerning the defect.

The court's disregard of *Parker* is as mystifying as its disregard of the trend previously discussed. One possible explanation, though, lies in the language of the Tort Claims Act. The Act states that when a claim arises from a premise defect, the government generally owes "the duty that a private person owes to a licensee on private property." Tex.Civ.Prac. & Rem. Code § 101.022(a). One might argue that the legislature was contemplating the particular duty that existed in 1969, when the Act was adopted, and that it intended the government to have that same duty forever. *See State v. Tennison*, 509 S.W.2d at 563 (Reavley, J., concurring).[3]

That argument, however, is unpersuasive. If the legislature had one specific duty in mind, it could easily have stated that duty expressly. *See, e.g.*, Tex.Civ. Prac. & Rem.Code § 101.022(b) (imposing "duty to warn"). But the legislature's intention was to make the government as responsible, within particular areas of law, as private persons. *See, e.g.*, Tex.Civ.Prac. & Rem.Code § 101.021(1)(B),(2). Thus, in section 101.022(a), the legislature expressly linked the applicable duty to the common law, knowing full well that the common law was moving toward a broader duty for owners and occupiers of land. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. at 630, 79 S.Ct. at 409.

Rather than obstruct the evolution of the common law, I would welcome it. Like the *Kermarec* court, I would impose on owners and occupiers of land "a single duty of reasonable care in all the circumstances." *Id.* Failing that option, I would dispense

with the requirement that the licensee affirmatively negate his or her knowledge of the dangerous condition.

### III.

The court's holding deprives Payne of the recovery to which the jury found he was entitled, and of which both courts below approved. In this situation, our rules require us to remand the cause for a new trial "if it shall appear that the justice of the cause demands another trial." Tex. R.App.P. 180; *see, e.g.*, *L.M.B. Corp. v. Gurecky*, 501 S.W.2d 300, 303 (Tex.1973). Regrettably, the court does not do so. Instead of giving Payne the opportunity to make his case under the rules announced today, the court chooses to slam the courthouse door shut.

Why did Payne try the case as he did? Perhaps it was because he took this court's language seriously. In *Parker*, we recognized that "[a] large body of Texas law, which has never been overruled, demonstrates that premises cases are more easily tried under ordinary negligence and contributory negligence principles." 565 S.W.2d at 519. That is exactly the manner in which this cause was tried.

Perhaps, to confirm his sense of how the duty issue should be submitted, Payne turned to the nearest law dictionary. If so, he would have found the following guidance under the heading, "Licensee":

> Formerly, the duty owed to a licensee was that of refraining from wilful, wanton, and reckless conduct. This rule has been changed and now, in most jurisdictions, the occupier of land owes the licensee the duty of reasonable or due care.

BLACK'S LAW DICTIONARY 830 (5th ed. 1979). That guidance, like *Parker*, is consistent with the manner in which this cause was tried.

Both Payne and the trial court made the same mistake: they applied modern premise liability jurisprudence. This court, for its part, applies a doctrine that was already antiquated when the United States Su-

---

**3.** To the extent that this reasoning underlies today's holding, future courts should beware of applying the court's opinion beyond the context of section 101.022(a).

preme Court rejected it in 1959. *Kermarec*, 358 U.S. at 630, 79 S.Ct. at 409. Worse, the court then punishes Payne's credulity by rendering judgment against him, rather than remanding the cause in the interest of justice.

This case was properly tried under ordinary principles of negligence. I would affirm the judgment of the court of appeals. Failing that, I would remand the cause for a new trial.

DOGGETT and GAMMAGE, JJ., join in this dissenting opinion.

### DISSENTING OPINION ON SECOND[1] MOTION FOR REHEARING

GONZALEZ, Justice.

On further reflection and study, I believe that the Court's writing on preservation of error is incorrect. For the reasons expressed in the dissenting opinion, 838 S.W.2d 235, 241 (Mauzy, J., dissenting, on motion for rehearing), I would grant the motion for rehearing and affirm the judgment of the court of appeals.

---

**1.** Ordinarily, under Rule 190(d) of the Texas Rules of Appellate Procedure, we do not entertain second motions for rehearing in the Supreme Court. However, we may make exceptions where, as here, we withdraw a prior opinion and issue a substantially revised one in its place. *Cf.* Tex.R.App.P. 100(d) (providing for "further motion for rehearing" to complain of new judgment or opinion in the court of appeals.)