TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00689-CV






Texas Department of Human Services, Appellant



v.



Elsie Sanders, Appellee






FROM THE DISTRICT COURT OF JEFFERSON COUNTY, 172ND JUDICIAL DISTRICT


NO. E-151045, HONORABLE DONALD J. FLOYD, JUDGE PRESIDING 






 This is a slip and fall premises liability case brought by appellee Elsie Sanders
against appellant Texas Department of Human Services (the "Department") under the Texas Tort
Claims Act. See Tex. Civ. Prac. & Rem. Code § 101.001 et. seq (West 1997). After a jury trial
on the merits, Sanders was awarded $18,831 in actual damages as a result of her fall on the
Department's premises. Judgment was rendered accordingly. On appeal, the Department argues
that there is no evidence to support the jury's finding that the Department had actual knowledge
of the unreasonably dangerous condition on its property, as required by the Texas Tort Claims
Act. Concluding that this evidentiary challenge is valid and compelling, we will reverse the trial
court's judgment and render a judgment that Sanders take nothing.


BACKGROUND

 The facts of this case are relatively straightforward. On October 5, 1993, Sanders
went to the Department's office in Port Arthur to re-apply for food stamps. After completing
portions of her application paperwork, Sanders went to a ladies' restroom in the Department's
lobby. This was the designated restroom for the Department's clients. While in the restroom,
the record indicates that Sanders slipped on some water resulting in injuries to her head, neck,
back, legs, and hip.

 At trial, Sanders was the only party to call witnesses about the accident in question. 
In fact, the only witnesses to testify at all were Sanders and the Department's employee who
investigated the accident, Helen Clark. Clark testified that she went to the restroom in question
after receiving a phone call about a lady lying "on the floor." When she arrived at the restroom,
she noticed Sanders lying on the floor next to some water. As noted in her investigative report,
it was her belief that the water on the floor was a result of child's play. She testified that on
previous occasions, not including the date when Sanders fell, she had been called to clean up
various messes in that particular restroom. One specific mess Clark testified to was a "large
water spill" caused by a "stopped up sink." She qualified this testimony, however, by
acknowledging that this was the only time she could recall when there had been a "collection of
water" on the bathroom floor. Moreover, she stated that there had been no other "plumbing
problems or leaking pipes" since that spill and that Sanders's incident was the first time someone
had ever reported a slip and fall to her office. Finally, Clark testified that while the Department
did not have a policy to regularly inspect the clients' restrooms, the restrooms were cleaned every
night by an outside janitorial service.


 Sanders testified mostly about her injuries and her resulting medical problems. She
did not testify about anything of substance regarding the Department's knowledge about the
restroom's condition prior to her accident. Her only statement regarding the water on the floor
was that she noticed it only after she had fallen.

 Following Sanders's presentation of her case-in-chief, the Department moved for
a directed verdict arguing, as it does on appeal, that Sanders produced no evidence of the
Department's actual knowledge of the dangerous condition (i.e., the water on the restroom floor)
as required by the Texas Tort Claims Act. The trial court overruled the Department's motion. 
Following that ruling, the Department introduced Sanders's medical records and then rested. 
After hearing closing arguments from both parties, the jury returned a verdict in favor of Sanders
for $18,831. Judgment was rendered accordingly. The Department appeals.


DISCUSSION 

 The duty owed by an occupier of land to a person injured on its premises is
dependent on the legal status of the injured party. See State v. Tennison, 509 S.W.2d 560, 562
(Tex. 1974). Generally, in a premises liability case, the legal status of the injured party is either
that of an invitee or licensee. The legal status of the injured party is of great importance because,
among other things, it determines the requisite duty the landowner owes the injured party. See
State Dep't. of Highways & Pubic Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). In
particular, if one is designated an invitee then that person need only show that the landowner knew
or reasonably should have known of the dangerous condition on the premises. This standard is
often referred to as "constructive knowledge" of the dangerous condition. See Tennison, 509
S.W.2d at 562. Conversely, if injured party is designated a licensee, then that person must prove
that the landowner had "actual knowledge" of the dangerous condition. Id. 

 Under the Texas Tort Claims Act, the Department owes Sanders the same duty a
private landowner owes a licensee. See Tex. Civ. Prac. & Rem. Code § 101.022(a); Payne, 838
S.W.2d at 237. That duty, as briefly mentioned above, requires that a landowner not injure a
licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care
either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner
is aware and the licensee is not. Payne, 838 S.W.2d at 237; see Restatement of Torts § 342
(1965). Thus, to establish a premises liability claim under the Texas Tort Claims Act, Sanders
was required to prove, absent willful, wanton or grossly negligent conduct, that: 


(1) a condition on the premises created an unreasonable risk of harm to the
licensee;


(2) the owner actually knew of the condition;


(3) the licensee did not actually know of the condition;


(4) the owner failed to exercise ordinary care to protect the licensee from danger;
and


(5) the owner's failure was a proximate cause of injury to the licensee.



Payne, 838 S.W.2d at 237 (emphasis added). 

 On appeal, the threshold issue presented by the Department in its first point of error
is that there is no evidence showing that the Department actually knew of a dangerous condition
in the ladies' restroom at the time of Sanders's accident.

 Sanders acknowledges that the Department may not have known of the actual water
on the restroom floor which caused her to slip and fall. However, in support of her contention
that the Department had ample knowledge of an unreasonably dangerous condition on its
premises, Sanders directs us to Clark's testimony that the Department knew that the restroom in
question often became messy, and that "spills," like the one Sanders slipped on, accompanied
such messes. Sanders therefore argues that the Department's failure to make safe or warn its
clients of the generalized dangers related to such messes is grounds for liability.

 Unfortunately for Sanders, the argument that the Department knew of such messes
in the past and thus knew or should have known about the spill causing her injuries is at best
"constructive knowledge" of the dangerous condition that injured her. As stated above,
constructive knowledge is not sufficient to hold the Department liable under such facts. See
Tennison, 509 S.W.2d at 562 (clear intent of legislature in imposing same duty upon State as that
owed by private persons to licensees on private property was to limit State's liability in torts
claims arising from premises defects). Therefore, because there is no evidence in this record to
support a finding that the Department actually knew of the dangerous condition present in the
restroom at the time Sanders fell, we sustain the Department's first point of error.



CONCLUSION

 Having sustained the Department's first point of error, we reverse the judgment of
the trial court and render judgment that Sanders take nothing by her suit.



 


 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Rendered

Filed: May 21, 1998

Do Not Publish



ured on its premises is
dependent on the legal status of the injured party. See State v. Tennison, 509 S.W.2d 560, 562
(Tex. 1974). Generally, in a premises liability case, the legal status of the injured party is either
that of an invitee or licensee. The legal status of the injured party is of great importance because,
among other things, it determines the requisite duty the landowner owes the injured party. See
State Dep't. of Highways & Pubic Transp. v. Payne, 838 S.W.2d 235, 237 (Tex. 1992). In
particular, if one is designated an invitee then that person need only show that the landowner knew
or reasonably should have known of the dangerous condition on the premises. This standard is
often referred to as "constructive knowledge" of the dangerous condition. See Tennison, 509
S.W.2d at 562. Conversely, if injured party is designated a licensee, then that person must prove
that the landowner had "actual knowledge" of the dangerous condition. Id. 

 Under the Texas Tort Claims Act, the Department owes Sanders the same duty a
private landowner owes a licensee. See Tex. Civ. Prac. & Rem. Code § 101.022(a); Payne, 838
S.W.2d at 237. That duty, as briefly mentioned above, requires that a landowner not injure a
licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care
either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner
is aware and the licensee is not. Payne, 838 S.W.2d at 237; see Restatement of Torts § 342
(1965). Thus, to establish a premises liability claim under the Texas Tort Claims Act, Sanders
was required to prove, absent willful, wanton or grossly negligent conduct, that: 


(1) a condition on the premises created an unreasonable risk of harm to the
licensee;


(2) the owner actually knew of the condition;


(3) the licensee did not actually know of the condition;


(4) the owner failed to exercise ordinary care to protect the licensee from danger;
and


(5) the owner's failure was a proximate cause of injury to the licensee.



Payne, 838 S.W.2d at 237 (emphasis added). 

 On appeal, the threshold issue presented by the Department in its first point of error
is that there is no evidence showing that the Department actually knew of a dangerous condition
in the ladies' restroom at the time of Sanders's accident.

 Sanders acknowledges that the Department may not have known of the actual water
on the restroom floor which caused her to slip and fall. However, in support of her contention
that the Department had ample knowledge of an unreasonably dangerous condition on its
premises, Sanders directs us to Clark's testimony that the Department knew that the restroom in
question often became messy, and that "spills," like the one Sanders slipped on, accompanied
such messes. Sanders therefore argues that the Department's failure to make safe or warn its
clients of the generalized dangers related to such messes is grounds for liability.

 Unfortunately for Sanders, the argument that the Department knew of such messes
in the past and thus knew or should have known about the spill causing her injuries is at best
"constructive knowledge" of the dangerous condition that injured her. As stated above,
constructive knowledge is not sufficient to hold the Department liable under such facts. See
Tennison, 509 S.W.2d at 562 (clear intent of legislature in imposing same duty upon State as that
owed by private persons to licensees on private property was to limit State's liability in torts
claims arising from premises defects). Therefore, because there is no evidence in this record to
support a finding that the Department actually knew of the dangerous condition present in the
restroom at the time Sanders fell, we sustain the Department's first point of error.



CONCLUSION

 Having sustained the Department's first point of error, we reverse the judgment of
the trial court and render judgment that Sanders take nothing by he