

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00493-CV

**CITY OF LAREDO**,
Appellant

v.

Ramiro **RODRIGUEZ**,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2023CVF001029D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:     Lori Massey Brissette, Justice

Sitting:        Lori I. Valenzuela, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: June 11, 2025

REVERSED AND RENDERED

In this premises liability case, Appellant the City of Laredo appeals the trial court's denial of its plea to the jurisdiction based on governmental immunity. The City argues the trial court did not have jurisdiction over appellee Ramiro Rodriguez's claim because the uneven bricks where Rodriguez fell do not constitute an unreasonably dangerous condition as a matter of law and the City had no actual knowledge of a premises defect. Because we conclude the City established it had no actual knowledge of a premises defect, and because Rodriguez did not create a genuine

issue of fact with regard to that issue, we reverse the trial court's denial of the plea to the jurisdiction and render judgment for the City dismissing this case for lack of jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez sued the City of Laredo under the Texas Tort Claims Act, alleging that while walking near the San Agustin Catholic Cathedral in the 900 block of Zaragoza Street in downtown Laredo, Texas, he tripped on uneven bricks and fell, sustaining injuries. The City filed a plea to the jurisdiction, and Rodriguez amended his petition.[1] After jurisdictional discovery proceeded, the City filed its first supplemental plea to the jurisdiction, and the trial court later held a hearing on the City's plea. The trial court then denied the City's plea to the jurisdiction, and the City timely filed this interlocutory appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

Governmental units including cities "are immune from suit unless immunity is waived by state law." *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). The party suing the governmental unit bears the burden to affirmatively show waiver of immunity. *Id.* "Because governmental immunity is jurisdictional, it is properly raised through a plea to the jurisdiction, which we review de novo." *Id.* A governmental entity's plea to the jurisdiction can be based on pleadings or evidence. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider the relevant evidence submitted by the parties to determine if a fact issue exists. *Id*. at 227; *Maspero*, 640 S.W.3d at 529; *City of San Antonio v. Riojas*, 640 S.W.3d 534, 536 n.8 (Tex.

---

[1] Rodriguez also filed a motion to continue the hearing on the City's plea to the jurisdiction. Following a hearing, the trial court issued an order granting Rodriguez's motion to continue. The City then filed a petition for writ of mandamus arguing the trial court had failed to rule on its plea to the jurisdiction. The trial court ruled on the City's plea to the jurisdiction before we ruled on the City's petition for writ of mandamus, and both parties then requested dismissal of the mandamus proceeding. Accordingly, we then dismissed the City's mandamus petition. *In re City of Laredo*, No. 04-24-00139-CV, 2024 WL 3512161, at *1 (Tex. App.—San Antonio July 24, 2024, no pet.).

2022). "The analysis then mirrors that of a traditional summary judgment." *Riojas*, 640 S.W.3d at 536 n.8. "To that end, in evaluating the parties' evidence, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Maspero*, 640 S.W.3d at 528–29.

The burden is on the City, as movant, to present evidence sufficient to negate jurisdiction. *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 391 (Tex. 2016). If it meets that burden, the burden shifts to Rodriguez, as the nonmovant, to demonstrate a factual dispute on the jurisdictional issue. *Id.* If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the factfinder. *Id.* at 392. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the plea must be granted. *Id.*; *Maspero*, 640 S.W.3d at 529.

"When a claim arises from a premises defect under the Tort Claims Act, 'the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property.'" *Sampson*, 500 S.W.3d at 391 (quoting TEX. CIV. PRAC. & REM. CODE § 101.022(a) (providing same and explaining standard does not apply if claimant pays for use of premises)). "The duty owed to a licensee requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Id.* (quoting *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)). "Absent willful, wanton, or grossly negligent conduct, a licensee must prove the following elements to establish the breach of duty owed to him":

> (1) a condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of injury to the licensee.

*Id.* (quoting *Payne*, 838 S.W.2d at 237) (internal quotation marks omitted).

Actual knowledge, rather than constructive or hypothetical knowledge of the dangerous condition, is required. *Id.* at 392. "Furthermore, the licensee must show that the owner actually knew of the 'dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time.'" *Id.* (alteration in original) (quoting *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010) (per curiam)). "Additionally, that the owner could have done more to warn the licensee is not direct evidence to show that the owner had actual knowledge of the dangerous condition." *Id.* "Although there is no one test for determining actual knowledge that a condition presents an unreasonable risk of harm, courts generally consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Id.* (quoting *Univ. of Tex.–Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008) (per curiam)) (internal quotation marks omitted).

**ANALYSIS**

In support of its plea to the jurisdiction, the City contended it did not have actual knowledge of the uneven bricks as a dangerous condition, pointing to evidence it never received any reports of similar accidents or defects with the bricks prior to Rodriguez's fall. Specifically, the City attached to its plea to the jurisdiction affidavits from its Director of Public Works, a police sergeant dispatched after Rodriguez's fall was reported, and the City's 3-1-1 call center supervisor.

In his affidavit, the City's Director of Public Works testified: "Prior to Mr. Rodriguez's accident, the City did not receive any notice of a prior similar accident at this location or prior notice that a defect on the [San Agustin] Church property presented a danger to the public. Therefore, the City was not aware of the dangerous condition caused by the brick paver on the property that caused Mr. Rodriguez to trip and fall prior to his accident." The police sergeant

dispatched following the report of Rodriguez's fall testified in his affidavit: "I routinely patrol this area as part of my daily duties. I am not aware of a similar accident that occurred at this location before Mr. Rodriguez's accident nor of any complaint about the brick pavers that may have caused a danger to the public." Lastly, in her affidavit the City's 3-1-1 call center supervisor testified she searched the City's Web-QA system and determined the City never received any 3-1-1 calls reporting a similar accident in the location where Rodriguez fell or reporting a dangerous defect in the bricks there. She concluded, "the City's 3-1-1 center was not aware of prior notice of the dangerous condition caused by the brick paver on the property that caused Mr. Rodriguez to trip and fall." Thus, the City's evidence in support of its plea to the jurisdiction showed the City did not have actual knowledge as it had not received "reports of prior injuries or reports of the potential danger presented by the condition." *Sampson*, 500 S.W.3d at 392 (quoting *Aguilar*, 251 S.W.3d at 513 (Tex. 2008) (internal quotation marks omitted).

Because actual knowledge of a dangerous condition at the time of the accident is a required element for a premises liability claim, the City's evidence negated jurisdiction and shifted the burden to Rodriguez to demonstrate a fact issue regarding actual knowledge. *See id.* at 391–92. In an attempt to do so, Rodriguez points to his own testimony by affidavit that he fell in a highly foot-trafficked area downtown across the street from a frequently occupied plaza and within ten to twenty feet of metered parking. Rodriguez also cites deposition testimony of the police sergeant dispatched following his fall, wherein the police sergeant testified he is one of twelve to fifteen police officers who patrol the downtown area by bike, the area where Rodriguez fell sees a significant amount of foot traffic, and the area is also patrolled by a traffic-enforcement officer. Rodriguez also references the incident reports of two officers which both stated that bricks in the area where Rodriguez fell had shifted and become uneven due to weathering. However, neither

officer asserted in their incident reports that they or anyone else were aware of the bricks' shifting or had knowledge the bricks posed a danger prior to Rodriguez's fall. Rodriguez also cites evidence showing the City deployed a construction crew to repair or install bricks in the area within three weeks after Rodriguez fell. Finally, Rodriguez presented as evidence photographs showing several uneven bricks in the area where he fell.

Rodriguez's evidence does not show "the City received any reports of prior injuries or reports of the potential danger presented by [the bricks]." *City of Laredo v. Torres*, No. 04-22-00453-CV, 2023 WL 6453823, at *7 (Tex. App.—San Antonio Oct. 4, 2023, no pet.). The two officers' incident reports from after Rodriguez's fall at most raise "the possibility" that the City could have known "a dangerous condition c[ould] develop over time," which is insufficient to raise a fact issue regarding actual knowledge of a dangerous condition at the time Rodriguez fell. *See Sampson*, 500 S.W.3d at 392 (alteration in original) (quoting *Hayes*, 327 S.W.3d at 117) (internal quotation marks omitted); *id.* at 397 ("Actual knowledge requires knowledge that the dangerous condition existed at the time of the accident, as opposed to constructive knowledge which can be established by facts or inferences that a dangerous condition could develop over time.") (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008) (internal quotation marks omitted).

Likewise, evidence that the downtown area is regularly patrolled by police officers at most raises a suspicion that other incidents may have occurred, which is not enough to create a fact issue. *See id.* at 394 ("some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence.") (quoting *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) (per curiam)) (internal quotation marks omitted). "[T]he proximity of the employees is no evidence of actual knowledge." *Id.* at 396 (quoting *City of Dallas v. Thompson*,

210 S.W.3d 601, 603 (Tex. 2006)) (internal quotation marks omitted). The fact that City employees "were in the area does not mean they actually observed" the uneven bricks or actually knew the bricks posed a danger. *Id.* And, finally, the fact that the City acted so quickly to address the condition after Rodriguez's fall works in the City's favor, not against it, showing it acted promptly to address a condition once it became aware. Thus, Rodriguez's evidence "does not create a material fact issue on actual knowledge." *Id.*

Because we cannot conclude the City had actual knowledge of the danger of the uneven bricks, we "cannot conclude the City breached any duty" to Rodriguez. *Torres*, 2023 WL 6453823, at *7. Accordingly, the trial court erred in denying the City's plea to the jurisdiction.[2] *Id.*

## CONCLUSION

We reverse the trial court's July 15, 2024 order denying the City's plea to the jurisdiction, render judgment granting the City's plea to the jurisdiction, and dismiss the case for lack of jurisdiction.

Lori Massey Brissette, Justice

---

[2] Because we conclude the trial court erred by denying the City's plea to the jurisdiction, we do not consider the City's argument that the uneven bricks where Rodriguez fell do not constitute an unreasonably dangerous condition as a matter of law, and we do not consider the City's argument in its reply brief that it did not own the property where Rodriguez's fall occurred. *See* TEX. R. APP. P. 47.1; *Torres*, 2023 WL 6453823, at *8 n.4. The City's November 25, 2024 motion for leave to file its reply brief is granted.