COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
2-07-066-CV

 

 

DENTON COUNTY, TEXAS                                                    APPELLANT

 

                                                   V.

 

DIANNE BEYNON AND ROGER                                                APPELLEES

BEYNON,
INDIVIDUALLY AND AS

NEXT
FRIENDS OF RHIANNON

BEYNON,
A MINOR

 

                                              ------------

 

            FROM
THE 211TH DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant Denton County,
Texas (ADenton@) brings
this accelerated, interlocutory appeal from the trial court=s order denying its plea to the jurisdiction on the special defect
claim of Appellees Dianne Beynon and Roger Beynon, individually and as next
friends of Rhiannon Beynon, a minor (ABeynon@).  See Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(8) (Vernon Supp. 2007).  In three issues, Denton complains that the
trial court erred by denying its plea to the jurisdiction because Denton is
immune from Beynon=s suit.  Because we hold that Beynon invoked the trial
court=s subject matter jurisdiction by establishing a waiver of Denton=s governmental immunity under the Texas Tort Claims Act (ATTCA@), we will
affirm.  See id. '' 101.021(2), 101.025(a) (Vernon 2005).

II.  Factual and Procedural Background








On October 17, 2004, Rhiannon
Beynon was a passenger in the backseat of a car traveling at approximately
thirty-five miles per hour along an unlit and undivided two-lane roadway with
unimproved shoulders in Denton County. 
It was dark at the time, and the driver, Mark Hilz, moved the car to the
edge of the roadway when he observed an oncoming vehicle driving in the center
of the road with its bright lights on. 
As Hilz moved the car over, it dropped off the edge of the pavement,
slid sideways, left the roadway, and punctured itself on the arm of a floodgate
owned and maintained by Denton.  The
floodgate arm, which is a metal pole that measures approximately seventeen feet
long, is attached to a metal base buried in the ground beside the roadway, and
can swing in either direction, was unsecured and facing in the wrong direction
(into oncoming traffic).  The tip of the
floodgate arm was positioned approximately three feet from the edge of the
roadway when it contacted the carCtearing through the driver=s side door, part of the driver=s side front seat, Rhiannon=s leg, and the floorboard of the passenger compartment where Rhiannon
was sitting.  Rhiannon=s leg was later amputated below her knee.

Beynon sued Denton for the
injuries that she sustained in the accident, claiming that Denton was negligent
and that the floodgate arm constituted either a premise defect or a special
defect for which Denton had waived its immunity from suit pursuant to the
applicable provisions of the TTCA.  As to
the special defect claim, Beynon alleged in part that the floodgate arm Apresented a threat to vehicular passengers and other ordinary users of
the roadway,@ that Denton
Afailed in its duty to exercise ordinary care in maintaining the pole
in a way to protect [Beynon] from the danger@ even though Denton Aknew or should have known of the unreasonable risk posed by the gate
and pole,@ and that
Denton failed to adequately warn of the condition=s existence and make the condition reasonably safe.








Denton answered and filed a
plea to the jurisdiction in response to Beynon=s petition.  Denton asserted
that Beynon=s pleadings
and claims do not fall within the TTCA=s limited waiver of governmental immunity from suit for personal
injuries caused by a premise defect or special defect.  As part of the supplemental brief to its plea
to the jurisdiction, Denton attached excerpts from the depositions of Hilz,
Roger and Dianne Beynon, and Mike Burton, a Denton County Road and Bridge
Department foreman.  Beynon filed a
response to Denton=s plea to
the jurisdiction, which included excerpts from the depositions of Jim Carter,
the County Commissioner for precinct four of Denton County, Burton, and Hilz,
affidavits of Carter and Andrew D. Irwin, an accident investigator and
reconstructionist, and photographs of the accident scene and vehicle.  The trial court ultimately granted Denton=s plea to the jurisdiction on Beynon=s premise defect and negligence claims but denied the plea as to the
special defect claim.  This interlocutory
appeal followed.

III.  Waiver of Governmental Immunity

In three issues, Denton
argues that the floodgate arm is not a special defect and that Beynon failed to
raise fact questions regarding whether Denton knew or should have known that
the floodgate arm was unsecured and whether Denton failed to exercise ordinary
care to protect Beynon from the floodgate arm.

A.     Standard of Review








A county=s immunity from suit defeats a trial court=s subject matter jurisdiction; thus, it is properly asserted in a plea
to the jurisdiction.  See Tex. Dep=t of Parks & Wildlife v. Miranda, 133
S.W.3d 217, 225-26 (Tex. 2004).  A plea
to the jurisdiction is a dilatory plea used to defeat a cause of action without
regard to whether the claims asserted have merit.  Bland ISD v. Blue, 34 S.W.3d 547, 554
(Tex. 2000).  Whether the trial court had
subject matter jurisdiction is a question of law that we review de novo.  Tex. Natural Res. Conservation Comm=n v. IT-Davy, 74 S.W.3d 849, 855 (Tex.
2002).

The plaintiff has the burden
of alleging facts that affirmatively establish the trial court=s subject matter jurisdiction.  Tex.
Ass=n of Bus. v.
Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex.
1993).  We construe the pleadings
liberally in favor of the plaintiffs, look to the pleader=s intent, and accept the pleadings= factual allegations as true.  Miranda,
133 S.W.3d at 226.  If a plea to the
jurisdiction challenges the existence of jurisdictional facts, we consider
relevant evidence submitted by the parties that is necessary to resolve the
jurisdictional issues.  Id. at
227; Bland ISD, 34 S.W.3d at 555. 
A trial court=s review of
a plea to the jurisdiction challenging the existence of jurisdictional facts mirrors
that of a traditional motion for summary judgment.  Miranda, 133 S.W.3d at 228; see
also Tex. R. Civ. P.
166a(c).  If the evidence creates a fact
question regarding jurisdiction, the trial court must deny the plea to the
jurisdiction and leave its resolution to the fact finder.  Miranda, 133 S.W.3d at 227-28.  But if the evidence is undisputed or fails to
raise a fact question on the jurisdictional issue, the trial court rules on the
plea to the jurisdiction as a matter of law. 
Id. at 228.








Here, Denton has challenged
both Beynon=s pleadings
and the existence of jurisdictional facts. 
Thus, we must examine the evidence submitted by the parties to determine
if Beynon raised a fact question regarding jurisdiction.  See id.

B.     Special Defect and
Governmental Immunity

Under the TTCA, a
governmental unit=s immunity
from suit is waived to the extent that the TTCA creates liability.  Tex.
Civ. Prac. & Rem. Code Ann. ' 101.025(a); State ex rel. State Dep=t of Highways & Pub. Transp. v. Gonzalez, 82 S.W.3d 322, 326 (Tex. 2002). 
A governmental unit may be liable for personal injuries caused by a
condition of real property if the governmental unit would, were it a private
person, be liable under Texas law.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2).  The standard
of care that must be exercised by a governmental unit depends on whether the
condition is classified as a premise defect or a special defect.  Id. ' 101.022(a), (b) (Vernon Supp. 2007); State Dep=t of Highways v. Payne, 838 S.W.2d
235, 237 (Tex. 1992).  If the condition
is a special defect, then Denton owed Beynon the same duty that a private
landowner owes an invitee, which requires a landowner to use ordinary care to
reduce or eliminate an unreasonable risk of harm created by a condition of the
premises of which the owner is or reasonably should be aware.  See Payne, 838 S.W.2d at 237.













The determination of whether
a condition is a special defect is a question of law for the court to
decide.  State v. Burris, 877
S.W.2d 298, 299 (Tex. 1994).  Special
defects include excavations or obstructions on highways, roads, or
streets.  Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(b); Payne, 838 S.W.2d at 238.  Courts have generally characterized special
defects as unexpected and unusual dangers to ordinary users of the
roadway.  Payne, 838 S.W.2d at
238.  However, a defect need not occur
upon the road surface itself to constitute a special defect if it is close
enough to present a threat to the normal users of the road.  Peterson v. City of Fort Worth, 966
S.W.2d 773, 775 (Tex. App.CFort Worth 1998, no pet.); Morse v. State, 905 S.W.2d 470,
474-75 (Tex. App.CBeaumont
1995, writ denied); see also Payne, 838 S.W.2d at 238 n.3.  But a condition located so far from the
roadway that vehicular passengers and other normal users of the roadway are
unlikely to encounter it is not a special defect.  Tex. Dep=t of Transp. v. Andrews, 155 S.W.3d
351, 356 (Tex. App.CFort Worth
2004 , pet. denied).  A special defect
must be something out of the ordinary course of events or distinguished by some
unusual quality rather than a longstanding, routine, or permanent
condition.  Id. at 356-57; Wildermuth
v. Parker County, 1 S.W.3d 705, 708 (Tex. App.CFort Worth 1999, no pet.).  The
supreme court has held that the examples included in the TTCACexcavations and obstructionsCare not exhaustive and has construed special defects to include other
defects of the same kind or class.  City
of Grapevine v. Roberts, 946 S.W.2d 841, 843 (Tex. 1997).

1.     The Floodgate Arm is a Special Defect 

In its first issue, Denton
argues that the floodgate arm is not a special defect because it is not an
excavation, obstruction, or other similar condition and because it did not
present an unexpected or unusual danger to ordinary users of the roadway since
it was located Afar enough
from the paved surface that normal users of the roadway were unlikely to
encounter it.@  We disagree. 
  Beynon=s jurisdictional evidence included multiple high quality photographs
of the location where the accident occurred. 
The photographs depict the road where the accident occurred, the size of
the road, the shoulders on each side of the road, the base to which the
floodgate arm is attached and its proximity to the roadway, and the floodgate
arm itself.  There is also a photograph
taken after the accident occurred that shows the crashed vehicle in its final
resting spot.













The photographs and other
relevant jurisdictional evidence show that the road where the accident occurred
is a two-lane road with unimproved shoulders. 
The unimproved shoulders consist mostly of weeds, grasses, and trees.  There is also a fence line following nearby
along the side of the shoulders that is not abutting the surface of the
road.  There are no Afrontage,@ side, or
alternative roads alongside of the roadway. 
When used properly, the floodgate arm swings out over the road to block
traffic in the event of a nearby flood over or near the road.  At the time of the accident, however, the
floodgate arm was unsecured and facing oncoming traffic with the tip positioned
approximately three feet from the edge of the roadway.  Three feet from the edge of a roadCeven a road with unimproved shouldersCis a relatively small distance. 
Indeed, a vehicle that pulls completely over onto an improved shoulder
must travel a distance greater than three feet from the edge of the portion of
the road where the vehicle normally drives. 
And although a normal user of the road in this case is going to drive on
the paved surface almost the entire time that he or she uses the road (because
the shoulder is unimproved and not conducive to driving a street vehicle
thereon), it is certainly not inconceivable that a normal user of the road
might pull off or leave the edge of the road onto the unimproved shoulder for
one reason or another, either intentionally or accidentally.  Thus, considering (1) that the road is a
two-lane road with an unimproved shoulder, (2) that, aside from the unimproved
shoulder, a normal user of the road has nowhere else to drive his or her
vehicle but on the paved roadway, and (3) that the tip of the floodgate arm was
positioned only about three feet off the edge of the roadway when Beynon=s car contacted it, we cannot say that the floodgate arm was so far
from the road that vehicular passengers and other normal users of the road were
unlikely to encounter it.  Rather, the
floodgate arm, which is an instrument intended to block traffic on the road
and, thus, is related to the roadway, was close enough to the road that it
presented a threat to normal users of the road.

Further, a floodgate arm that
is positioned in such a way that the tip is located approximately three feet
from the edge of a road such as the one in this case is a condition that an
ordinary user of the roadway would find unexpected and unusually
dangerous.  Hilz=s deposition testimony evidences this point precisely.  He testified that, as the car slid out of
control and was about to hit a clump of trees on the side of the road, he
thought that he would merely have to repair the damage to the vehicle and pay a
large deductible.  He testified as
follows:

The
thing that I recall is seeing a small clump of trees that we were heading for
. . . .  And the only thing I
was thinking to myself at the time is: Darn, you know, I just screwed up the
car; I=m
about to screw up the car; we=re going to hit this clump of
trees.

 

But I had no concern about physical, being
physically hurt because the speed wasn=t that great.  You know, when you=re in
an accident, you can tell whether you=re physically going to be
harmed or you=re
more concerned about damages to the car and you=re
going to get really ticked off that you=re going to have to now, you
know, make an insurance claim and have damage and you got to do the deductible.

 








So I can remember it just passing through my
brain very quickly that here it goes, there=s another thousand-dollar
deductible . . . .

 

But after the vehicle came to a stop, Hilz
realized that Rhiannon had sustained a serious injury to her leg.  He testified as follows:

Rhiannon in the back seat shortly after we came
to a stop started screaming about her foot. 
And I was thinking maybe her foot got jammed up beneath my seat.  I couldn=t comprehend at - - you know,
I was trying to put things together.

 

And I was like, well, gosh, maybe she broke her
an[k]le or maybe her foot=s
under my seat or something.  I really
didn=t
understand what was going on.  So I said,
AWell,
Rhiannon, let me see, you know, let me see your foot.@  Because I was thinking maybe her foot, her
an[k]le was broken.

 

And she went to put her foot up on the center
console in between us and I looked over and I notice[d] and I saw obviously
that there was no foot.

 








Considering this testimony, Hilz later testified
predictably that he thought it unexpected and unusual to find the floodgate arm
pointing towards him.  Thus, just as Hilz=s deposition testimony demonstrates that he found it unexpected and
unusual that the floodgate arm was unsecured and facing in the wrong direction
with the tip positioned in such close proximity to the road, a normal user of
the road who departs a mere three feet from the edge of the roadway would find
it unusual and unexpected to have his or her vehicle impaled upon a seventeen
foot metal pole that was facing oncoming traffic and positioned approximately
three feet from the edge of the roadway. 
Consequently, we hold that the floodgate arm constituted a special
defect of the kind covered by the TTCA and that Denton waived its immunity from
suit on this issue.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.022(b); Payne, 838 S.W.2d at 238; Peterson,
966 S.W.2d at 775.  We overrule Denton=s first issue.

2.     Denton=s Knowledge and Ordinary Care

In its second and third
issues, Denton argues that even if the floodgate arm is a special defect as
that term is defined, it did not waive its immunity from suit because it did
not have actual or constructive knowledge that the floodgate arm was unsecured and
because it exercised ordinary care to protect Beynon from the danger.

Beynon argues that Denton
waived these issues by failing to raise them in the trial court.  We decline to entertain Beynon=s preservation argument, however, because Denton is challenging the
trial court=s subject
matter jurisdiction.  Because subject
matter jurisdiction is essential to the authority of a court to decide a case,
it can never be presumed and cannot be waived. 
See Tex. Ass=n of Bus., 852 S.W.2d at 443-44; but
see City of Dallas v. VSC, LLC, 2006 WL 1688440, at *8 (Tex. App.CDallas 2006, no pet.) (holding that appellant failed to preserve for
appellate review argument not raised in trial court).  Therefore, we will address Denton=s second and third issues.








To establish liability for a
tort claim arising from a special defect under the TTCA, a plaintiff must show
that (1) a condition of the premises created an unreasonable risk of harm to
the invitee, (2) the owner knew (actual knowledge) or reasonably should have
known (constructive knowledge) of the condition, (3) the owner failed to
exercise ordinary care to protect the invitee from danger, and (4) the owner=s failure was a proximate cause of injury to the invitee.  Payne, 838 S.W.2d at 237; Stokes v.
City of San Antonio, 945 S.W.2d 324, 326 (Tex. App.CSan Antonio 1997, no writ).  It
has long been the rule that a premises owner is considered to have constructive
knowledge of any dangerous condition that a reasonably careful inspection would
reveal.  Corbin v. Safeway Stores,
Inc., 648 S.W.2d 292, 295 (Tex. 1983); Sanmina-SCI Corp. v. Ogburn,
153 S.W.3d 639, 642 (Tex. App.CDallas 2004, pet. denied).  A
fact issue regarding a governmental unit=s actual or constructive knowledge of a special defect may exist if
the evidence demonstrates that the condition existed for a substantial period
of time.  See Harris County v. Eaton,
573 S.W.2d 177, 180 (Tex. 1978).  A defendant
fails to exercise ordinary care to protect the plaintiff from danger when the
defendant fails to adequately warn the plaintiff of the condition and fails to
make the condition reasonably safe.  State
v. Williams, 940 S.W.2d 583, 584 (Tex. 1996). 








Here, Denton submitted
evidence that Hilz and Roger and Dianne Beynon did not have any evidence or
information that Denton had been notified of the condition before the
accident.  Burton testified that it was
never Denton=s intention
to leave the floodgate arm facing in the wrong direction, that Denton employees
monitored the area for unsecured floodgate arms, and that a repair log kept by
Denton used to document maintenance performed on the floodgates did not
indicate that there had been any chains or padlocks repaired or replaced on the
floodgate involved in the accident. 
Denton further asserts in its brief that Beynon did not allege or
produce any evidence that the floodgate had been unsecured for a substantial
amount of time.








Beynon, however, responded
with evidence that Denton knew that the floodgates had become unsecured.  Burton, Denton=s County Road and Bridge Department foreman, testified that people cut
the chains securing the floodgates in the closed position Aevery time we have high water@ because the drivers do not want to detour around the closed
road.  Burton stated that children also
cut the chains and pull the gates out over the road Afor fun and pranks.@  Burton testified that Denton
employees, aware that the gates become unsecured, drive along the road and
through the area maybe once a week to check the floodgates.  Hilz agreed that since the time of the
accident he had heard complaints that the floodgate arm involved in this case Ahad routinely been left loose and that the County had neglected it and
not gone back to lock it.@  He testified without objection that he became
aware of the complaints Ain talking
with other neighbors about that particular arm and about not just that
particular arm but there=s multiple
other arms around that intersection and that other neighbors had noticed it and
always were concerned.@  And Burton agreed that Aif the procedures had been followed properly, [the floodgate arm]
should have been locked up facing the other direction.@








The plea to the jurisdiction evidence raises an inference
that the unsecured condition of the floodgate arm either existed for a
substantial period of time or existed for a period of time such that the
condition would have been revealed through a reasonably careful
inspection.  See Corbin, 648 S.W.2d at 295; Eaton,
573 S.W.2d at 180.  Indeed, a few photographs of the floodgate taken on November 4, 2004 (over two
weeks after the accident occurred) show that the floodgate arm was still not
secured by a lock or chain, as Denton claims is the normal method of securing
the arms.[1]  Beynon did not present evidence raising a
fact question that Denton actually knew that the floodgate arm was
unsecured.  However, we hold that Beynon
controverted Denton=s plea to
the jurisdiction evidence by presenting evidence raising a fact question as to
whether Denton had constructive knowledge, and therefore should have known,
that the floodgate arm was unsecured.  See
Miranda, 133 S.W.3d at 227-28. 
Accordingly, we overrule Denton=s second issue.

Considering Burton=s testimony that the floodgate arm should have been secured and facing
in the other direction if Denton=s procedures had been followed properly, Hilz=s testimony that he had no idea before the accident occurred that the
floodgate arm was pointing towards oncoming traffic, and the other
jurisdictional evidence above, we hold that Beynon raised a fact question as to
whether Denton exercised ordinary care to protect Beynon from the danger of the
unsecured floodgate arm.  See id.;
Williams, 940 S.W.2d at 584. 
Accordingly, we overrule Denton=s third issue.

IV.  Conclusion

Having overruled all of Denton=s issues, we affirm the trial
court=s
order denying Denton=s
plea to the jurisdiction on Beynon=s special defect claim.

 

 

 

 

DIXON W. HOLMAN

JUSTICE

 

 

PANEL
A:  HOLMAN, GARDNER, and MCCOY, JJ.

 

DELIVERED:  November 29, 2007

 











[1]The photographs show that the
floodgate arm is apparently secured by a thin type of wire.