**Affirmed and Opinion filed September 30, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00780-CV

---

## IN RE COMMITMENT OF TIMOTHY BAIZA, Appellant

---

**On Appeal from the 161st District Court
Ector County, Texas
Trial Court Cause No. B-18-08-1075-CV**

---

## OPINION

In this appeal from a final order of civil commitment, a jury found that Timothy Baiza is a sexually violent predator as defined in chapter 841 of the Texas Health and Safety Code and therefore subject to civil commitment.[1] On appeal, Baiza contends (1) the evidence is legally and factually insufficient to "support a beyond-a-reasonable-doubt finding that [Baiza] has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence"; (2) the trial

---

[1] Tex. Health & Safety Code §§ 841.001-.151. This case was transferred to our court from the Eleventh Court of Appeals; therefore, we must decide the case in accordance with its precedent if our decision would be otherwise inconsistent with its precedent. Tex. R. App. P. 41.3.

court abused its discretion in admitting expert testimony referring to unadjudicated and uncharged allegations as evidence forming the basis of the expert's opinion; and (3) the trial court erred in including a limiting instruction in the jury charge regarding hearsay evidence forming the basis of the expert's opinion.[2] We affirm.

## *Background*

The State filed a petition alleging Baiza is a sexually violent predator and asking that he be committed for treatment and supervision. The case was tried to a jury. The jury found beyond a reasonable doubt that Baiza "is a sexually violent predator as defined in Section 841.003 of the Texas Health and Safety Code." The trial court rendered final judgment ordering Baiza civilly committed for treatment and supervision to commence upon Baiza's release from prison until his behavioral abnormality "has changed to the extent that [he] is no longer likely to engage in a predatory act of sexual violence and is released from commitment in accordance with" chapter 841.

### I.     Sexual Offenses

The State presented pen packets that showed Baiza's convictions for four sexual offenses. Baiza pleaded guilty to two counts of aggravated sexual assault of a child involving two of his male cousins. At the time of the purported offenses, Baiza was seventeen and eighteen years old, one cousin was seven years old, and the other cousin was ten or eleven years old. Baiza was sentenced to two years' confinement for each offense. The sentences ran concurrently. Baiza later pleaded guilty to two counts of aggravated sexual assault against a woman. These two sexual assaults purportedly occurred approximately seven months after Baiza's release from prison. Baiza received two twenty-year concurrent sentences for those

---

[2] *See* Tex. Health & Safety Code § 841.146(b) (appeal of civil commitment).

2

offenses.

## II.     Baiza's Testimony

Baiza admitted that when he was seventeen, he sexually assaulted his seven year old male cousin. Baiza continued the assault while his cousin was crying and begging him to stop. Baiza said he had consumed marijuana, cocaine, and alcohol beforehand. He testified he did it because his cousin trusted him and he "just wanted to get off." Baiza also said that when he was eighteen, he sexually assaulted another male cousin who was ten or eleven at the time. That cousin also asked him to stop, but Baiza continued. When asked why he did it, Baiza said that cousin also trusted him and he "took advantage of that trust and . . . was excited" and also "wanted to get off."

When Baiza was released from prison for the sexual assaults of his cousins, he was required to register as a sex offender. He did that but failed to comply with certain sex offender registration requirements. He received a three-year sentence for failure to comply with sex offender registration requirements that ran concurrently with the offense for which he was in prison at the time of trial. At that time, Baiza was also serving two twenty-year concurrent sentences for aggravated sexual assault of an adult female.

Baiza testified that he did not know the woman he assaulted prior to the offense. She was staying with a man named Jack who had purchased drugs from Baiza. On the night of the offense, Baiza was at a party at Jack's house. He left the party but returned with some friends to rob Jack. Baiza told his friends to tie Jack to a bed, and then Baiza went toward the woman's bedroom. On his way to her bedroom, he grabbed a metal clock with a glass face. When he tried to enter the bedroom, the woman told him she was on the phone calling the police. He testified, "I felt like something took over me. Like, I knew it wasn't me." He kicked the door

3

down and struck her with the clock. He then forced her onto the bed and threatened to kill her if she "didn't shut the fuck up." He put a pillow over her face and sexually assaulted her. He admitted that she begged him to stop. Baiza said he assaulted the woman because he felt rejected and "like she was better than me" and he "thought that she was one of Jack's girls, and that [he] could pretty much have [his] way with her." Baiza said he would not have assaulted the woman if he had been in his "right state of mind" but he had taken cocaine, marijuana, heroin, and Xanax that night.

According to Baiza, substance abuse did not cause him to commit offenses but it "pushed [him] to the edge to where [he] didn't care." He continued to drink and use marijuana in prison but testified that he had been sober since 2009. He did not receive substance abuse treatment. At the time of trial, Baiza was participating in a sex offender treatment program. He had obtained his GED, had taken vocational classes, and currently attended Bible study. He testified that being around children could be a trigger but he did not believe he was at risk of reoffending.

### III.    Expert Analysis

The State presented Dr. Jason Dunham as an expert. Dunham, a forensic psychologist, performed a clinical assessment of Baiza to testify concerning his opinion about whether Baiza suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dunham testified he had been conducting evaluations of behavioral abnormality in Texas for almost 15 years and had conducted approximately 253 evaluations in Texas. He had conducted 68 similar evaluations in the state of Washington.

Dunham did not conduct the initial evaluation of Baiza. After the initial evaluation, Dunham was hired to determine whether he agreed with the initial

evaluation of a behavioral abnormality. His methodology for an evaluation is to review records, conduct an interview, and do actuarial testing. He identified and discussed several risk factors that he considered in evaluating whether Baiza has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Dunham reviewed police reports, complainant and witness statements, court documents, prison disciplinary records, the report from the initial evaluation, and depositions taken as part of the lawsuit. After reviewing the records and interviewing Baiza, Dunham concluded that Baiza has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Dunham identified the following risk factors: antisocial orientation, sexual deviance, characteristics of the complainants, the timing of the offenses, the pattern of offending, and the level of force and violence used. Additional risk factors included Baiza's young age at the time of the offenses, the commission of the offenses while using substances, and the location of the offenses where Baiza easily could have been detected. Also, Baiza's accounts of the offenses differed from the complainants' accounts. Grooming and offending against two children in two different instances were also risk factors. Offending again within seven months of his release from prison was also a risk factor. Another risk factor was the fact that he chose different categories of people—an adult and children, males and a female, and family members and a stranger. The force and violence exhibited in the last offense were greater than in the first two. Moreover, Baiza's prior time in prison did not deter him from offending again. Dunham concluded Baiza's risk for reoffending was high.

Dunham diagnosed Baiza with polysubstance dependence on drugs and alcohol, antisocial personality disorder, and sexual psychopathy. Dunham also

discussed Baiza's nonsexual criminal history, which includes several different types of criminal behaviors. Dunham found this history significant because it reflects that Baiza is impulsive and is not deterred by the potential consequences of his actions. Dunham's psychopathy diagnosis was based on the following behaviors: starting to break the law at eleven years old, fire starting, doing drugs and alcohol starting at seven years old, violating probation, criminal versatility, and his crimes were all committed before he was twenty-one years old.

Dunham also discussed Baiza's participation in a prison sex offender treatment program. According to Dunham, Baiza had made minimal progress in the program by the time of trial and demonstrated minimal understanding of treatment concepts. Baiza did not understand that he is at risk to reoffend and required more than a few more months of sex offender treatment.

Dunham conducted two tests of Baiza, the Psychopathy Checklist Revised (PCL-R) and the Static 99R. The PCL-R tests twenty characteristics of psychopathy and determines where a person falls on a spectrum. Dunham scored Baiza within the high range for psychopathy with the following characteristics, among others: need for stimulation, proneness to boredom, lacking empathy and being callous, poor behavioral controls, early behavior problems, impulsivity, and conning and manipulative behavior. As for the Static 99R, it measures the risk of a sex offender being rearrested or convicted of a sex offense in the future. Dunham opined that Baiza was in the highest risk category for reoffending.

Dunham also looked at risk reducing factors for Baiza, which included admitting that he committed the sexual offenses for which he was convicted and a lack of prison disciplinary infractions for sexual misconduct. Dunham concluded that these factors did not significantly reduce Baiza's risk. Considering all the factors, Dunham labeled Baiza as high risk of reoffending. He concluded that

Baiza's condition is chronic, Baiza demonstrated the inability to control his behavior and sexual impulses even after being incarcerated for sexual assault, and the treatment he received in prison was insufficient to reverse all his risks of reoffending.

## *Discussion*

Baiza contends that the evidence is legally and factually insufficient to support the jury's finding beyond a reasonable doubt that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Baiza also challenges the trial court's (1) admission of Dunham's testimony regarding unadjudicated and uncharged allegations as evidence forming the basis of his opinion, and (2) limiting instructions in the jury charge regarding that evidence. We begin with a discussion of the statute and then turn to the issues.

## I.   The Texas Civil Commitment of Sexually Violent Predators Act

The legislature provided for the civil commitment of sexually violent predators under the Texas Civil Commitment of Sexually Violent Predators Act (the Act) on a finding that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory actions of sexual violence." Tex. Health & Safety Code § 841.001. The legislature expressly found that "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." *Id.*

Under the Act, a person is a sexually violent predator if he (1) is a repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id.* § 841.003(a). A

7

person must be administratively determined to be a sexually violent predator before the State files suit. *In re Bohannan*, 388 S.W.3d 296, 298 (Tex. 2012); *see also* Tex. Health & Safety Code §§ 841.021-.023. When the administrative determination is made, notice is given to an attorney representing the State. Tex. Health & Safety Code § 841.023.

An attorney representing the State may file a civil commitment proceeding in the court of conviction for the person's most recent sexually violent offense after the person has been referred to the State. *Id*. § 841.041(a). If a judge or jury determines that the person is a sexually violent predator, the trial court must commit the person for treatment and supervision to begin on the date of release from prison and to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." *Id*. § 841.081(a).

## II.    Sufficiency Challenge

Baiza contends in his third and fourth issues that the evidence is legally and factually insufficient to support the jury's finding that he has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence on the basis that Dr. Dunham's opinion is unreliable because it is conclusory and speculative. The Act requires the State to prove beyond a reasonable doubt that a person is a sexually violent predator. *Id*. § 841.062(a); *see also In re Fisher*, 164 S.W.3d 637, 639-41 (Tex. 2005).

For legal sufficiency challenges, we employ the criminal standard of review in cases brought under the Act. *See In re Stoddard*, 619 S.W.3d 665, 675 (Tex. 2020). We must view the evidence in the light most favorable to the prosecution and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Id*. (citing *Jackson v. Virginia*,

8

443 U.S. 307, 319 (1979)). The Texas Supreme Court recently clarified the distinction between legal and factual sufficiency standards of review in civil commitment cases when, as here, the burden of proof is beyond a reasonable doubt. *Id*. at 668. In both legal and factual sufficiency review, we presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so, but we may not ignore undisputed facts contrary to a finding. *Id*. at 676. A distinction arises in treatment of disputed evidence that a reasonable factfinder could not have credited in favor of a finding—we disregard such disputed evidence in a legal sufficiency review, but we consider this disputed evidence in a factual sufficiency review. *Id*.

Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). Evidence is factually insufficient to support a jury finding under the Act when the evidence contrary to the finding is so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true. *Stoddard*, 619 S.W.3d at 668, 678.

According to Baiza, Dunham admitted that he failed to rely on the following purportedly important factors in forming his opinions: the percentage of risk of likelihood to reoffend, a local normative sample that would involve comparing Baiza to other Texas offenders, and a diagnosis related to psychopathy. Baiza also asserts that Dunham failed to give proper weight to positive factors of no sexual misconduct in prison, no pedophile diagnosis, quitting drugs and alcohol,

9

involvement in a sex offender treatment program, and the deterrent impact of Baiza's incarceration. We address each of these factors in turn.

**Percentage Risk for Reoffending**. Baiza scored a 6 on the Static 99R test, which measures someone's risk of being rearrested or reconvicted of a sex offense in the future based on static factors based on what has happened in the past. Dunham testified that he does not report a percentage risk for reoffending, also known as a predictive recidivism rate, "because it can be misleading for people who don't quite understand this type of literature." He prefers to report a range of risk instead of a percentage. We have held that the Act does not require a "numerical or percentage statement of whether a person is 'likely' to reoffend." *In re Ausbie*, No. 14-18-00167-CV, 2021 WL 1972407, at *8 (Tex. App.—Houston [14th Dist.] May 18, 2021, no pet.) (sub. mem. op.). Instead, the question is whether there are sufficient indicia that a person has a condition causing predisposition toward violent sexual conduct. *Id.* (citing *Bohannan*, 388 S.W.3d at 302-03). Accordingly, Dunham was not required to opine on a percentage risk for reoffending to assess whether Baiza has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

**Local Normative Sample**. Dunham acknowledged that the authors of the Static 99R test suggest using a local normative sample comparing the test subject to other local offenders. He agreed with Baiza's counsel that the authors recommend using a Texas normative sample for a Texas offender, but he did not know what the "percent sexual recidivism rate" would be for someone like Baiza who scored a 6 on the test. Again, the relevant question is not based on the percentage likelihood that someone might reoffend. It is based on the overall indicia showing someone is predisposed toward reoffending. *See id.*

**Psychopathy Diagnosis**. According to Baiza, Dunham offered conflicting

testimony as to whether Baiza had psychopathy. Dunham testified that he would consider Baiza to be a sexual psychopath. Dunham conducted the PCL-R (Psychopathy Checklist Revised) on Baiza, which is a peer reviewed and researched test, and scored him on a spectrum based on 20 separate characteristics. Dunham scored Baiza as within the high range of psychopathy. Dunham testified that he considered Baiza to be a psychopath based on "the conning and manipulation and the grooming and . . . his statements that, I did it because I knew I wouldn't get caught. [These] are kind of classic lines that you hear from people who are psychopathic." According to Dunham, "the presence of psychopathy" was a "pretty significant" risk factor for reoffending. Dunham also said he did not make a diagnosis based on psychopathy—"the diagnosis would be antisocial personality disorder." We do not agree that this testimony creates a conflict in the evidence, but even if it did, it is not within the province of this court to interfere with the jury's resolution of conflicts in the evidence or to pass on the weight or credibility of the witness's testimony. *See Stoddard*, 619 S.W.3d at 676 & n.12.

Baiza also relies on Dunham's statement that he did not make a diagnosis of psychopathy to support an argument that Dunham failed to test for psychopathy, which Baiza contends is required under the Act. *See* Tex. Health & Safety Code § 841.023(a) ("The expert shall make a clinical assessment based on testing for psychopathy, a clinical interview, and other appropriate assessments and techniques to aid the department in its assessment."). We do not agree that Dunham failed to test for psychopathy based on the above referenced testimony. As discussed, Dunham testified in detail as to his administration of the PCL-R, the results of the test, and his conclusion that he considered Baiza to be a psychopath.

**Positive Factors**. Baiza also contends that Dunham failed to give appropriate weight to factors that might contribute to a positive outcome for Baiza,

including no instances of sexual misconduct in prison, the lack of a pedophile diagnosis, quitting drugs and alcohol, and the deterrent impact of Baiza's 18-year incarceration. Dunham addressed these factors and explained the basis for his evaluation regarding them.

He said it was not unusual for an inmate who sexually assaulted children not to have any sexual misconduct cases because the inmate would not have access to children. However, Baiza's sexual offenses were not against only children, and Dunham did not find him to be a pedophile because Dunham did not have enough information to do so. Dunham did, however, conclude that Baiza displayed sexual deviancy as a condition.

Dunham also acknowledged that Baiza had apparently stopped using drugs and alcohol after having used them in prison for 12 years. Dunham opined, "I'm not sure why it stopped. It is not to say . . . it is not going to start up again when he is out." He also acknowledged that Baiza was in a sex offender treatment program in prison. According to Dunham, Baiza had made minimal progress in the program by the time of trial and demonstrated minimal understanding of treatment concepts. Baiza did not understand that he is at risk to reoffend, and he required more than a few more months of sex offender treatment. Dunham acknowledged that Baiza's 18 years of incarceration could be a deterrent even though the earlier "1 or 2 years wasn't." Again, it is within the province of the jury to pass on the weight and credibility of the witness's testimony—we cannot do so. *See Stoddard*, 619 S.W.3d at 676 & n.12.

**Other Evidence**. Dunham determined that Baiza's risk to reoffend is high based on numerous risk factors: the diagnosis of antisocial personality disorder, the complainant's characteristics, the timing and pattern of offending, the level of force and violence used, and the display of sexual deviance. Dunham also

12

identified other risk factors, including that Baiza committed sexual offenses while on probation, while he was using drugs, and at locations where he could be discovered easily, and that he groomed the two children and offended against several categories of people—children and an adult, family members and a stranger. Baiza's first incarceration for sexual offenses, moreover, did not deter him from offending again.

Dunham also took into consideration Baiza's behavior as a juvenile, drug and alcohol use, failure to comply with probation, prison disciplinary cases, and entire criminal record involving sexual and nonsexual offenses.[3] Dunham testified that based on all these factors and not just considering one thing in isolation, Baiza's sexual deviance, antisocial personality disorder, and other risk factors create a "pretty dangerous combination." According to Dunham, Baiza cannot control his sexual impulses, he needs more treatment to reverse the risk factors he had when he went to prison, his condition is chronic, and nothing shows his condition has changed.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude the evidence is legally sufficient to support a finding beyond a reasonable doubt that Baiza has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. Moreover, the evidence contrary to the finding is not so significant in light of the entire record that the factfinder could not have determined beyond a reasonable doubt that its finding was true. Thus, the evidence is also factually sufficient to support the jury's verdict. We overrule Baiza's third and fourth issues. We turn to his other appellate issues.

---

[3] Baiza did not challenge Dunham's methodology in relying on nonsexual offenses in forming his opinion.

13

### III.    Admission of Evidence Forming Basis of Expert Opinion

In his first issue, Baiza challenges the trial court's admission of evidence of unadjudicated and uncharged allegations against Baiza that Dunham testified he relied on in forming his opinion. Baiza contends on appeal that the evidence was unreliable hearsay, any probative value of the evidence was outweighed by its prejudicial effect under Texas Rule of Evidence 705(d), and admission of the evidence violated his due process rights. We review evidentiary rulings for an abuse of discretion. Evidentiary rulings are committed to the trial court's sound discretion. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). A trial court abuses this discretion in acting without regard for guiding rules or principles. *Id*. Even if the trial court abused its discretion in admitting evidence, we only reverse if the error was harmful, in other words, if it probably resulted in an improper judgment. *Id*.

Dunham testified that one of Baiza's cousins said that Baiza sexually assaulted him about four times over four years. Baiza's counsel objected to hearsay, which the trial court overruled. Dunham testified that the sexual abuse began when Baiza's cousin was six and Baiza was fourteen. Baiza's counsel then objected on the basis that the testimony was covered by a motion in limine. The trial court dismissed the jury, and Baiza's counsel objected outside of the presence of the jury to testimony "regarding unadjudicated conduct" on the following grounds: it was more prejudicial than probative and "my client has due process rights." The trial court ruled that Dunham could testify there were unadjudicated offenses that formed the basis of his opinion and could specify the number of those offenses but could not go into the details. After the jury returned, Dunham testified that he relied on unadjudicated offenses in forming his opinion and that Baiza had unadjudicated offenses against "[o]ne other person. And then other occasions with

14

another person."

**Hearsay and Prejudice**. Rule 703 provides that "an expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed." Tex. R. Evid. 703. The underlying facts and data need not be admissible for the opinion to be admitted. *Id*. Under Rule 705, experts may disclose such facts and data on direct examination or be required to disclose them on cross-examination, and they may discuss prior offenses as part of the basis for their opinions, including the details of other sexual assaults even if they are unadjudicated. Tex. R. Evid. 705(a); *Ausbie*, 2021 WL 1972407, at *7. Thus, even otherwise inadmissible hearsay may be admissible under Rule 703. *See Ausbie*, 2021 WL 1972407, at *7. But Rule 705 prohibits the proponent of the opinion from disclosing inadmissible facts or data "if their probative value in helping the jury evaluate the opinion is outweighed by their prejudicial effect." Tex. R. Evid. 705(d).

Unadjudicated offenses are not necessarily more prejudicial than probative when they explain the basis of an expert's opinion. *In re Guest*, No. 02-19-00295-CV, 2021 WL 1245087, at *8 (Tex. App.—Fort Worth Apr. 1, 2021, pet. denied) (mem. op.); *see also In re Grice*, 558 S.W.3d 323, 328 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (holding prejudice was limited by the fact that "very little information regarding the underlying facts was adduced" and trial "contained a litany of allegations of criminal and other antisocial behavior"); *In re Stuteville*, 463 S.W.3d 543, 555–56 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (holding trial court did not abuse its discretion by admitting evidence of uncharged sexual offenses to explain basis of expert's opinion that defendant suffered from behavioral abnormality). Our court has upheld a trial court's decision to allow an expert to testify about the details of unadjudicated offenses in

a case brought under the Act, and sister courts have repeatedly done the same. *See Grice*, 558 S.W.3d at 328 (holding trial court did not abuse its discretion by admitting evidence of two offenses that were originally charged as sexual offenses but were subsequently reduced to nonsexual offenses because admission was not unfairly prejudicial); *see also Guest*, 2021 WL 1245087, at *8 (holding trial court did not abuse its discretion by admitting evidence of unadjudicated sexual offenses because admission was not unfairly prejudicial); *In re Johnson*, 613 S.W.3d 613, 618 (Tex. App.—San Antonio, 2020 pet. denied) (same); *In re Renshaw*, 598 S.W.3d 303, 314 (Tex. App.—Texarkana 2020, no pet.) (holding experts in civil commitments may disclose underlying facts that the expert relied on, including the details of adjudicated and unadjudicated sexual assaults).

Dunham did not testify as to the details of any unadjudicated offenses after the trial court instructed him not to, so the jury heard only the following information. Baiza purportedly sexually assaulted his cousin four times over four years, which started when Baiza's cousin was six and Baiza was fourteen. This cousin was also the complainant in one of the cases in which Baiza was convicted, but these details involved additional purported unadjudicated offenses. Dunham also generally testified that he relied on unadjudicated offenses in forming his opinion, including one offense against one other person and more than one offense against another person.[4] The jury also heard evidence of Baiza's prior offenses for which he was convicted, which included sexually assaulting two cousins when they were six and ten and sexually assaulting an adult woman. Moreover, the trial court included a limiting instruction in the jury charge that explained the scope and purpose of the evidence, which we discuss in more detail below. We presume the jury followed the court's limiting instructions in the absence of evidence to the

---

[4] On voir dire, Dunham mentioned a purported unadjudicated offense against a woman, but the jury did not hear evidence pertaining to that incident.

contrary.[5] *See Johnson*, 613 S.W.3d at 618; *see also Stuteville*, 463 S.W.3d at 555.

We cannot say on this record that the trial court abused its discretion in determining that the probative value of the unadjudicated offense testimony was not substantially outweighed by the danger of unfair prejudice. Based on this record, the trial court reasonably could have concluded that the limited facts and details related to Baiza's unadjudicated offenses would be helpful to the jury in weighing Dunham's testimony particularly with respect to Dunham explaining the basis for his opinion that Baiza suffers from a behavioral abnormality. *See Guest*, 2021 WL 1245087, at *8; *see also Grice*, 558 S.W.3d at 328.

**Due Process**. Baiza also contends that the evidence of unadjudicated offenses was unreliable hearsay admitted in violation of his due process rights. In support, he cites an opinion from New York's highest court in which the respondent argued on appeal that his right to due process was violated by the admission of expert testimony involving "unreliable, testimonial hearsay." *See State v. Floyd Y.*, 2 N.E.3d 204, 22 N.Y.3d 95, 103 (N.Y. 2013). Applying the framework for civil procedural due process applicable in civil commitment hearings, the Court of Appeals of New York held that evidence of two uncharged allegations of sexual abuse was based on unreliable hearsay and was admitted in violation of the respondent's due process rights. *Id*. at 110.

---

[5] Baiza also asks this court not to follow precedent from the Ninth Court of Appeals involving admissibility of basis evidence, but he cited a case from the First Court of Appeals. *Stuteville*, 463 S.W.3d at 556 (citing *In re Alvarado*, No. 09-13-00217-CV, 2014 WL 1285136, at *10 11 (Tex. App.—Beaumont Mar. 27, 2014, pet. denied) (mem. op.) (holding evidence of charged and uncharged sexual offenses was admissible), and *In re King*, No. 09-13-00255-CV, 2014 WL 346109, at *2-3 (Tex. App.—Beaumont Jan. 23, 2014, no pet.) (mem. op.) (holding trial court did not abuse its discretion by allowing expert to testify about details of respondent's past sexual offenses)). As discussed, our decision follows precedent from the Eleventh Court of Appeals and our own precedent to the extent that it is consistent with the Eleventh Court's precedent. Tex. R. App. P. 41.3.

Texas courts apparently have not addressed a due process challenge to the admission of unreliable hearsay evidence that serves as the underlying basis for an expert's opinion under the Act. Here, the evidence admitted was very limited, as discussed above, and Baiza invoked Rule 705(d)'s balancing test, which operates as a safeguard requiring the trial court to determine whether the probative value of the evidence in helping the jury evaluate Dunham's opinion was outweighed by its prejudicial effect. *See* Tex. R. Evid. 705(d). Rule 703 also provides a safeguard because an expert's opinion based "on facts or data in the case that the expert has been made aware of, reviewed, or personally observed" is admissible only when "experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *See* Tex. R. Evid. 703. Presuming without deciding that despite these safeguards, Baiza could establish the admitted evidence was unreliable hearsay implicating his due process rights, he was also required to show, in light of the whole record, that the trial court's admission of the evidence probably caused the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a); *Grice*, 558 S.W.3d at 328; *see also In re M.P.*, 220 S.W.3d 99, 113 (Tex. App.—Waco 2007, pet. denied) (applying harm analysis to due process challenge); *Bott v. Bott*, 962 S.W.2d 626, 631 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (same). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *Grice*, 558 S.W.3d at 329 (citing *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000)).

Here, the unadjudicated offenses were briefly mentioned, and few details were given. Additionally, as discussed above, Dunham provided ample support for his conclusion that Baiza suffers from a behavioral abnormality making him likely to engage in a predatory act of sexual violence. *See id*. Dunham and Baiza himself

18

testified regarding numerous criminal and other antisocial acts committed by Baiza, including four convictions for sexual assault. Dunham further explained how his diagnosis of Baiza and other specified factors informed Dunham's opinion. *See id.* Based on the volume of evidence supporting Dunham's conclusions and the relatively brief mention of the challenged extraneous offenses, we conclude that the judgment did not turn on the admitted evidence and that the trial court's ruling did not probably cause the rendition of an improper judgment. *See* Tex. R. App. P. 44.1(a).

We overrule Baiza's first issue.

## IV.    Limiting Instruction

Baiza challenges in his second issue the trial court's inclusion of a limiting instruction in the jury charge. To preserve a charge error complaint for appellate review, a party must "point out distinctly the objectionable matter and the grounds of the objection" before the charge is read to the jury. Tex. R. Civ. P. 272, 274; *Saenz-Guerrero v. Gardner*, 587 S.W.3d 191, 193–94 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "All objections not so presented shall be considered as waived." Tex. R. Civ. P. 272. Generally, preservation of charge error requires the objecting party to make a complaint "timely and plainly" and obtain a ruling from the trial court. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992); *Saenz-Guerrero*, 587 S.W.3d at 194.

The trial court instructed the jury:

In this case, certain hearsay information contained in records reviewed by an expert or experts was admitted before you through expert testimony. Such hearsay was admitted only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Baiza did not object to the limiting instruction and in fact requested a substantially

similar instruction—

> [I]n this case, certain hearsay information contained in records was reviewed and relied upon by experts and will be presented to you through that expert's testimony. Such hearsay evidence is being presented to you only for the purpose of showing the basis of the expert's opinion and cannot be considered as evidence to prove the truth of the matter asserted.

Because Baiza did not object to the trial court's limiting instruction and in fact requested a substantially similar instruction, he did not preserve this issue for our review. *See Saenz-Guerrero*, 587 S.W.3d at 195; *cf. Stuteville*, 463 S.W.3d at 555 (holding respondent failed to rebut presumption that jury followed limiting instructions when he neither objected to the limiting instruction included in the jury charge nor requested a different or additional instruction). We overrule Baiza's second issue.

### *Conclusion*

We affirm the trial court's order of civil commitment.

/s/    Frances Bourliot
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.

20