**Reversed and Rendered and Memorandum Opinion filed July 23, 2024**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00111-CV

---

**CITY OF MISSOURI CITY, Appellant**

**V.**

**ALLANIAS HAMPTON AND DAMITA HAMPTON, INDIVIDUALLY AS NEXT OF FRIEND TO ALAINA HAMPTON, MINOR, Appellees**

---

**On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 21-DCV-287388**

---

## MEMORANDUM OPINION

Appellant City of Missouri City appeals from the trial court's denial of its plea to the jurisdiction and no evidence summary judgment motion on jurisdiction. In twelve issues, Missouri City contends that the trial court erred in denying its plea and motion. We reverse the ruling of the trial court and render judgment dismissing all claims against Missouri City.

BACKGROUND

Appellees Allanias and Damita Hampton, both individually and as next of friend to Alaina Hampton, brought suit against Missouri City for an injury Alaina incurred on a softball field at a public park.[1]

Alaina played on a softball team. The team organized a scrimmage against another team. The scrimmage was played on a softball field in a public park in Missouri City that is owned and maintained by Missouri City. During the scrimmage, while playing shortstop Alaina dove for a ball along the third base line, in the foul area. In doing so Alaina collided with a metal fence post. Part of the fence had a small metal piece, part of a gate to the field, that was projecting into the foul area of the field. When Alaina collided with the fence, this metal piece caused a laceration on her face requiring cosmetic surgery to correct. Alaina "suffered a deep laceration above her eye and a fractured skull, nose, and cheek bone" from the collision. Because of her injury she missed much of her eleventh-grade softball season.

Importantly, the scrimmage occurred in September 2020, during the COVID-19 pandemic. Missouri City was not issuing permits for competitive games on its fields, including the field where Alaina was injured. However, the field was unlocked and remained open. Alaina's team did not apply for, or receive, a permit to use the field. Missouri City did not organize the game, oversee the game, or have any knowledge of the game at the time it was played. Missouri City did not charge or accept payment for the game or the use of the field.

---

[1] At the time appellees filed the lawsuit Alaina was a minor and has since reached the age of majority. Alaina's parents initially brought the lawsuit on her behalf and also asserted bystander claims against Missouri City.

Prior to this lawsuit, Missouri City had received no complaints of the condition on the fence to the field or any like it; no similar accident has ever been reported. However, the field had not been inspected since December 2019, or approximately nine months prior to the accident. The Parks Director testified that even if they had inspected the field prior to the accident, it is unlikely they would have noticed the bent metal bar because they generally look at the condition of the fencing as a whole.

Appellees filed suit asserting claims of "general negligence/premises liability" and "negligence/premise liability of special defect" against Missouri City as well as bystander claims based on witnessing Alaina's accident. Appellees alleged that they brought their claims against Missouri City under the Texas Torts Claims Act. Missouri City filed a plea to the jurisdiction and an "immunity-based" no evidence motion for summary judgment. The trial court denied Missouri City's plea to the jurisdiction and no evidence motion for summary judgment based on a determination that Missouri City waived its governmental immunity under the Torts Claims Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109. Missouri City filed this interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8).

## STANDARD OF REVIEW

Generally, the State of Texas and its agencies retain sovereign immunity from suit unless the Legislature clearly and unambiguously waives it. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115 (Tex. 2010). "Political subdivisions of the state, including cities, are entitled to such immunity—referred to as governmental immunity—unless it has been waived." *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). The Legislature has waived

3

governmental entities' immunity from certain claims by means of the Tort Claims Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.001–.109.

"Whether a court has subject matter jurisdiction is a question of law, properly asserted in a plea to the jurisdiction." *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed *de novo*." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Generally, the standard mirrors that of summary judgment. *Sampson*, 500 S.W.3d at 384. "When the evidence submitted to support the plea implicates the merits of the case, we take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor." *Id*.

## TORT CLAIMS ACT

The Tort Claims Act waives immunity for personal injuries caused by a condition on real property. Tex. Civ. Prac. & Rem. Code §§ 101.021(2), 101.025(a). If the claim arises from a premises defect, the government's duty is generally limited to "the duty that a private person owes to a licensee on private property." *Id*. § 101.022(a), (c). But for special defects, the government owes a duty to warn that is the same as a private landowner to an invitee. *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 86–87 (Tex. 2023). Whether a condition is a special defect or an ordinary premises defect is a question of law. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 238 (Tex. 1992).

A "special defect" is "a subset of premises defects likened to excavations or obstructions on roadways." *Christ*, 664 S.W.3d at 86. "The Legislature does not define special defect but likens it to conditions 'such as excavations or obstructions on highways, roads, or streets.'" *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d

4

113, 116 (Tex. 2010) (quoting Tex. Civ. Prac. & Rem. Code § 101.022(b)). The statutory examples of special defects are not exclusive. *City of El Paso v. Chacon*, 148 S.W.3d 417, 422 (Tex. App.—El Paso 2004, pet. denied). However, "[t]he class of special defects contemplated by the statute is narrow." *Kownslar v. City of Houston*, 654 S.W.3d 472, 476 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *see also Harris Cnty. v. Eaton*, 573 S.W.2d 177, 179 (Tex. 1978) ("The statutes provide an understanding of the kinds of dangerous conditions against which the legislature intended to protect the public."). "[C]onditions can be special defects 'only if they pose a threat to the ordinary users of a particular roadway.'" *Hayes*, 327 S.W.3d at 116 (quoting *Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009)).

To prove a claim for premises liability, the plaintiff must establish her status at the time of the injury as invitee, licensee, or trespasser because "the duty an owner or occupier of property owes someone on the property depends on that person's status." *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021). A plaintiff's status is a question of law but may be a question of fact when facts relevant to the legal standard are disputed. *Id*. Status is determined based on the circumstances at the time and place of the injury. *Id*.

## A.     Invitee Status

The parties dispute Alaina's status at the time of her injury. Missouri City contends that Alaina was either a trespasser or licensee. Alaina contends that she was either an invitee or a licensee. Because it is undisputed that Alaina did not pay for use of the facility, the only way Alaina can obtain invitee status is by a determination that the alleged dangerous condition is a "special defect." *See* Tex. Civ. Prac. & Rem. Code § 101.022(a) (same as a licensee "unless the claimant pays for the use of the premises"), (b); *see also Hayes*, 327 S.W.3d at 116 ("The

5

Act applies different standards of care depending upon whether the condition was a premises defect, *id*. § 101.022(a) (same duty as licensee), or a special defect, *id*. § 101.022(b) (same duty as invitee).").

Alaina contends that she is an invitee because the protruding metal bar is a "special defect." However, the jurisprudence is clear that a "special defect" must be located on or near a highway, road, or street such that it would pose a threat to the ordinary users of a particular roadway. *See* Tex. Civ. Prac. & Rem. Code § 101.022(b); *see also Hayes*, 327 S.W.3d at 116; *Beynon*, 283 S.W.3d at 331; *Kownslar*, 654 S.W.3d at 476; *Eaton*, 573 S.W.2d at 179. Here, the alleged dangerous condition is located on the gate to a softball field in a city park. There is no evidence that the condition was on or near a highway, road, or street, or that it posed a threat to the ordinary users of a particular roadway. *See Hayes*, 327 S.W.3d at 116 ("[P]laintiff bears the burden to allege facts demonstrating jurisdiction."). We conclude as a matter of law that the alleged dangerous condition is not a "special defect." *See Kownslar*, 654 S.W.3d at 478; *see also Barker v. City of Galveston*, 907 S.W.2d 879, 884 (Tex. App.—Houston [1st Dist.] 1995, writ denied) (concluding swing set in public park was not a "special defect" as a matter of law because it did not present an unexpected or unusual danger to ordinary users of roadways); *Beynon*, 283 S.W.3d at 331 ("This Court has never squarely confronted whether a hazard located off the road can (or can never) constitute a special defect, though we did note in *Payne* that some courts of appeals have held certain off-road conditions to be special defects.").[2] Because we conclude that the alleged dangerous condition on a gate to a softball field located

---

[2] However, all such special defects were at least *near* a road. *See Payne*, 838 S.W.2d at 238 n.3. "Only two courts have found a special defect when the defect did not present a hazard to the ordinary users of a roadway. . . . and, to the extent they classify as 'special' a defect that is not like an excavation or obstruction on a roadway, we disapprove them." *See id.*

6

within a city park is not a "special defect" as that term has been interpreted, we conclude that Alaina is not an invitee as a matter of law.[3]

We sustain Missouri City's seventh issue.

**B.     Licensee Status**

Because licensee status affords Alaina the greatest protection, we will assume without deciding that Alaina is a licensee.[4]  "The duty owed to a licensee requires that 'a landowner not injure a licensee by willful, wanton or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'"  *Sampson*, 500 S.W.3d at 391 (quoting *Payne*, 838 S.W.2d at 237)).  Absent willful, wanton, or grossly negligent conduct, a licensee must show:

> (1) the condition of the premises created an unreasonable risk of harm to the licensee; (2) the owner actually knew of the condition; (3) the licensee did not actually know of the condition; (4) the owner failed to exercise ordinary care to protect the licensee from danger; (5) the owner's failure was a proximate cause of the injury to the licensee.

*Payne*, 838 S.W.2d at 237.  To defeat Missouri City's jurisdictional plea, Alaina was required to raise a fact issue regarding whether Missouri City had actual knowledge of the alleged dangerous condition or that Missouri City was grossly negligent.  *See City of Houston v. Gilbert*, 656 S.W.3d 603, 615 (Tex. App.— Houston [14th Dist.] 2022, pet. denied).

---

[3] Alaina could also be an invitee if she had paid for use of the premises under the Tort Claim Act.  *See* Tex. Civ. Prac. & Rem. Code § 101.022 (a).  However, it is undisputed that Alaina did not pay for use of the premises.

[4] Missouri City contends Alaina is a trespasser and that the only duty owed is to not injure Alaina intentionally or through gross negligence.  Alternatively, Missouri City contends the Recreational Use Statute applies and Alaina must show gross negligence, malicious intent, or bad faith.  *See* Tex. Civ. Prac. & Rem. Code § 75.003.

Actual knowledge is when the possessor or owner knows that the dangerous condition existed when the plaintiff was injured. *City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012). To establish actual knowledge the plaintiff must show that "the owner actually knew of the 'dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition c[ould] develop over time.'" *Sampson*, 500 S.W.3d at 392 (quoting *Hayes*, 327 S.W.3d at 117)). Hypothetical knowledge will not suffice. *Id*. While circumstantial evidence can establish actual knowledge, such evidence must either directly or by reasonable inference support that conclusion. *Id*. (quoting *Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015)). An inference premised on mere suspicion, or some suspicion linked to other suspicion, is not reasonable. *Id*. at 394. A court may consider whether the possessor had received reports of the potential danger created by the condition or of injuries caused by it in determining whether the possessor had actual knowledge. *Univ. of Tex.-Pan Am. v. Aguilar*, 251 S.W.3d 511, 513 (Tex. 2008).

Alaina argues that a genuine issue of material fact exists as to whether Missouri City knew of the alleged dangerous condition. Alaina argues that the alleged dangerous condition was "open and obvious to the City who was charged with the responsibility of inspecting the fences for conditions that needed to be repaired as the owner of the premises." Alaina contends that because inspecting the fences around the ballfields are part of routine maintenance and Missouri City admitted it inspected each park at least once weekly, someone doing a walk-through could have seen the protruding metal bar.

We disagree. There is no evidence in the record to show when the fence was damaged to create the alleged dangerous condition. The evidence put forth by Alaina was that inspections of the fence are part of the routine maintenance and

weekly inspections of the park facilities. Missouri City admitted it maintains the fences at the city parks and that the general condition of all parks is inspected weekly. At weekly inspections, city employees determine if any repair work needs to be done. However, even showing that Missouri City had inspected the fence that week or even the day prior to Alaina's injury, there is no indication that at the time of the inspection the alleged dangerous condition existed. *See Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) ("An employee's proximity to a hazard, with no evidence indicating how long the hazard was there, merely indicates that it was *possible* for the premises owner to discover the condition . . . ."). On the evidence presented, it is pure speculation to assume that the fence had been damaged prior to Missouri City's last inspection. "Without evidence showing how long the [dangerous condition existed], 'the proximity of the employees is no evidence of actual knowledge.'" *See Sampson*, 500 S.W.3d at 395 (quoting *City of Dallas v. Thompson*, 210 S.W.3d 601, 603 (Tex. 2006) (per curiam)).

Alaina did not show that there were any prior complaints about the condition of the fence around the ball field she was injured on. There is no evidence of any city employee admitting to knowledge of the alleged dangerous condition prior to Alaina's injury. There were no records of any maintenance items or projects conducted or needing to be done prior to her injury regarding this alleged dangerous condition. There was no evidence of any prior similar injuries. Even taking as true all evidence favorable to Alaina and indulging every reasonable inference and resolving any doubts in her favor, there is no evidence that Missouri City had actual knowledge of the alleged dangerous condition.[5]

---

[5] To the extent, if any, Alaina pleaded that Missouri City was grossly negligent, we would conclude, based on the above evidence, she failed to provide any evidence of the subjective-knowledge component of the gross negligence standard. *See Suarez v. City of Tex. City*, 465 S.W.3d 623, 634 (Tex. 2015) ("To satisfy the subjective-knowledge component of the

Alaina next argues that in the two months prior to Alaina's injury, Missouri City's Director of Parks and Recreation presented a "site redevelopment plan" where he stated that the sports fields at the park at issue were "dilapidated." Alaina argues that this is an admission of actual knowledge of the alleged dangerous condition because the fields were generally "dilapidated." However, the knowledge that a dangerous condition could develop over time is insufficient to prove actual knowledge of the alleged dangerous condition at the time of the accident. *See Sampson*, 500 S.W.3d at 392 (quoting *Hayes*, 327 S.W.3d at 117). This evidence shows only the opinion of Missouri City's employee of the general condition of the ball fields at the park and says nothing of the specific alleged dangerous condition at issue in this case. "[T]he fact that materials deteriorate over time and may become dangerous does not itself create a dangerous condition, and the actual knowledge required for liability is of the dangerous condition at the time of the accident, not merely of the possibility that a dangerous condition can develop over time." *City of Dallas*, 210 S.W.3d at 603. There is no evidence that Missouri City had actual knowledge of the protruding metal bar. *See Sampson*, 500 S.W.3d at 397.

Alaina is not an invitee as a matter of law and, if a licensee, failed to raise a fact issue regarding Missouri City's actual knowledge of the alleged dangerous condition. Therefore, the trial court erred by not granting the plea to the jurisdiction and jurisdictional no evidence motion. *See Kownslar*, 654 S.W.3d at 476–77 ("[I]f the relevant evidence . . . failed to raise a fact question on the

---

gross negligence standard, the governmental entity must have 'knowledge that the dangerous condition existed at the time of the accident.'" (quoting *City of Corsicana v. Stewart*, 249 S.W.3d 412, 414–15 (Tex. 2008)). Alaina's amended petition did not assert gross negligence, malicious intent, or bad faith conduct.

jurisdictional issue, then the trial court should have ruled on the plea as a matter of law.").

We sustain Missouri City's eighth issue.

### BYSTANDER CLAIMS

Appellees Allanias and Damita Hampton assert bystander liability claims against Missouri City on the basis that they are close family members and witnessed Alaina's accident and injury. Missouri City contends that because there is no jurisdiction over Alaina's claims, the bystander claims must also fail.

"Before a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim." *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex. 1997). "Although bystander claims are considered independent and not derivative, it is also true that the bystander plaintiff cannot recover unless the injured person can recover." *Estate of Barrera v. Rosamond Village Ltd. P'ship*, 983 S.W.2d 795, 799–800 (Tex. App.—Houston [14th Dist.] 1998, no pet.). Because we have concluded there is no jurisdiction over Alaina's claims for injury, we similarly conclude there is no jurisdiction over the bystander claims.

### REMAINING ISSUES

Appellees contend in their response brief they did not assert a design or manufacturing defect claim against Missouri City, making issues nine, ten, and eleven moot. Based on our conclusion that Alaina is not an invitee and there is no evidence of actual knowledge under the licensee standard of care, we need not address Missouri City's remaining issues regarding the standard of care owed if Alaina is a trespasser. *See State ex rel. Tex. Dep't of Parks & Wildlife v. Shumake*, 131 S.W.3d 66, 74 (Tex. App.—Austin 2003, as supplemented on denial of reh'g

11

(Apr. 15, 2004), *aff'd sub nom.*, *State v. Shumake*, 199 S.W.3d 279 (Tex. 2006) ("The standard of care owed to trespassers . . . is the lowest standard of care a landowner can owe those on her land."); *see also* Tex. R. App. P. 47.1.

## CONCLUSION

We conclude that Alaina is not an invitee because the protruding metal bar is not a "special defect" as a matter of law and that it is undisputed that Alaina did not pay for use of the premises. Assuming without deciding that Alaina is a licensee, we conclude there is no evidence Missouri City had actual knowledge of the protruding metal bar at the time of Alaina's injury. Therefore, Alaina failed to establish the trial court's jurisdiction to consider her claims against Missouri City. Further, because the trial court lacks jurisdiction to consider Alaina's claims, it also lacks jurisdiction over the bystander claims of Allanias and Damita Hampton. For these reasons, we reverse the trial court's order denying Missouri City's plea to the jurisdiction and render judgment dismissing Appellees' claims for lack of subject matter jurisdiction.


/s/ Ken Wise
Justice


Panel consists of Chief Justice Christopher and Justices Wise and Jewell.

12